# LOCAL NO. 207, INTERNATIONAL ASSOCIATION OF BRIDGE, STRUCTURAL AND ORNA-MENTAL IRON WORKERS UNION, ET AL. *v.* PERKO.

No. 482.   Argued April 23–24, 1963.—Decided June 3, 1963.

*David E. Feller* argued the cause for petitioners. With him on the briefs were *Jerry D. Anker* and *Joseph Schiavoni.*

*Martin S. Goldberg* argued the cause and filed a brief for respondent.

*J. Albert Woll, Robert C. Mayer, Theodore J. St. Antoine* and *Thomas E. Harris* filed a brief for the American Federation of Labor and Congress of Industrial Organizations, as *amicus curiae,* urging reversal.

MR. JUSTICE HARLAN delivered the opinion of the Court.

This case, involving a suit by a union member against a local union, raises issues of federal preemption similar to those considered in *Local 100, United Assn. of Journeymen* v. *Borden, ante,* p. 690, also decided today.

In the present case the respondent, Jacob Perko, filed a complaint in a state court against Local 207 of the International Association of Bridge, Structural and Ornamental Iron Workers Union and certain of its officers, petitioners here, seeking damages under state common law. He alleged that for several years he had been a member in good standing of the iron workers local and had been employed "as a foreman" by the William B. Pollock Company; that the defendants without justification had conspired to deprive him of the right to continue

to work "as a foreman"; that pursuant to this conspiracy they had demanded that the company discharge him from his duties "as superintendent and foreman"; that as a result he had been discharged, and defendants had since prevented him from obtaining work "as a foreman in ironwork by representing that plaintiff's foreman's rights had been suspended"; and that he was entitled to damages for past and future loss of earnings in the amount of $75,000.

An order of the trial court that the complaint be dismissed was reversed by the Supreme Court of Ohio and the case remanded for trial, 168 Ohio St. 161, 151 N. E. 2d 742. The court disposed of the union's argument that Perko had failed to exhaust internal union remedies by noting that:

> "Plaintiff is not attempting to secure any redress for loss of rights as a member of the union. . . . He is alleging that the union to which he belonged and certain named officials thereof committed a common-law tort against him by conspiring to deprive him of his right to earn a living and interfering with his contract of employment . . . ." 168 Ohio St., at 162, 151 N. E. 2d, at 744.

In answer to the union's argument that federal law precluded the exercise of state jurisdiction, the court stated that there was no federal preemption with regard to a state action "to recover damages for a common-law tort, which is also an unfair labor practice," citing *International Assn. of Machinists* v. *Gonzales,* 356 U. S. 617.

At trial, a verdict was directed for petitioners, but this ruling was reversed on appeal, and a second trial was held. The evidence at this trial showed that Perko had generally worked for the company as a "foreman" or "superintendent"; [1] that in December 1953 he was working as

---

[1] The record indicates that as used in this case a "superintendent" is the supervisor of an entire construction project, who has working

a superintendent on a particular project; that in that capacity he gave instructions to boilermakers with respect to performance of certain phases of the work that the iron workers claimed; and that following this incident Perko was charged by members of petitioner local with assisting boilermakers in violation of the union's rule [2] and was found guilty, fined and suspended from membership. The fine, however, was later suspended and Perko was placed on probation, being permitted to resume payment of dues.

According to the evidence introduced by Perko, the iron workers informed the company, after settlement of the jurisdictional dispute with the boilermakers, that they would no longer take orders from Perko because he had been "educating the boilermakers in their particular work." Some weeks after completion of the project, the company laid him off "due to his dispute with the union," and Perko did not thereafter obtain employment with Pollock, or with any other company either as a superintendent or as a foreman.

The jury brought in a verdict of $25,000 for Perko, and the judgment was affirmed by the Court of Appeals. 90 Ohio L. Abs. 65, 187 N. E. 2d 407. That court rejected again the contention that the State was without jurisdiction, and held on the merits that although "there is very little that supports the cause sued on here," the evidence was sufficient to sustain the verdict. The Supreme Court of Ohio dismissed an appeal "for the reason that no debatable constitutional question is involved." 173 Ohio St. 576, 184 N. E. 2d 100. We granted certiorari, 371

---

under him groups of employees of various crafts. One member of each such craft group is designated as its "foreman" and has the responsibility of receiving orders from the superintendent and transmitting them to his particular crew.

[2] The rule provided that "any member that leaves the iron workers to go in as a boilermaker *or assist them in any way* will be fined $500." (Emphasis added.)

U. S. 939, to consider the petitioner's claim that the State lacked jurisdiction over this dispute by virtue of the National Labor Relations Act, 49 Stat. 449, as amended, 29 U. S. C. §§ 151–168.

At the outset we note that for the reasons set forth in *Borden, ante,* p. 690, the rationale of the *Gonzales* case does not support state jurisdiction here, and we need not now consider the present vitality of that rationale in the light of more recent decisions. As in *Borden,* the crux of the action here concerned alleged interference with the plaintiff's existing or prospective employment relations and was not directed to internal union matters. Indeed the state court itself observed that "Plaintiff is not attempting to secure any redress for loss of rights as a member of the union." *Supra,* p. 703. Thus there was no permissible state remedy to which the award of consequential damages for loss of earnings might be subordinated.

Respondent contends, however, that in any event the exercise of state jurisdiction is not precluded because the matter is clearly not subject to the Labor Board's cognizance.[3] The basis of this contention is respondent's claim that he was a job superintendent, and thus a "supervisor" within the meaning of the Act,[4] at the time of the alleged tort and that he was thus excluded from the scope, operation, and protection of federal law. There are, we

---

[3] Respondent does not challenge the existence of the requisite effect on commerce to bring the matter within the scope of the Board's jurisdiction.

[4] Section 2 (3) of the Act defines "employee" as not incluaing "any individual employed as a supervisor." Section 2 (11) defines "supervisor" as meaning "any individual having authority, in the interest of the employer, to hire, transfer, suspend, lay off, recall, promote, discharge, assign, reward, or discipline other employees, or responsibly to direct them, or to adjust their grievances, or effectively to recommend such action, if in connection with the foregoing the exercise of such authority is not of a merely routine or clerical nature, but requires the use of independent judgment."

believe, two independent and conclusive answers to this argument, both of which establish that this matter falls squarely within the preemption principles declared in *San Diego Building Trades Council* v. *Garmon,* 359 U. S. 236.

*First,* even if it is conceded that a job superintendent is a supervisor, it is at least reasonably arguable that a foreman, as that term has been used in this case, is an "employee" within the meaning of the Act, since his function is apparently to transmit instructions, not to originate them. See, *e. g., New York Shipping Assn.,* 116 N. L. R. B. 1183. Perko in his complaint alleged that he had worked for many years "as a foreman," that the actions of the defendant were designed to cause his discharge "as superintendent and foreman," and that he was subsequently prevented from obtaining employment "as a foreman." The evidence indicated that Perko sometimes worked for Pollock as a regular iron worker in a gang, sometimes as a foreman, and sometimes as a superintendent.

It is evident that this case presents difficult problems of definition of status, problems which we have held are precisely "of a kind most wisely entrusted initially to the agency charged with the day-to-day administration of the Act as a whole." *Marine Engineers Beneficial Assn.* v. *Interlake Steamship Co.,* 370 U. S. 173, 180. It is entirely possible that the Board might conclude that a foreman under the facts of this case is an employee and that a man whose status fluctuates, as Perko's seemingly did, is entitled to claim the protection afforded employees under the Act. Given such a conclusion, Perko's complaint—that the petitioners caused his discharge and prevented his subsequent employment as a foreman as well as a superintendent—falls within the ambit of the unfair labor practices prohibited by §§ 8 (b)(1)(A) and 8 (b)(2)

of the Act.[5]  And since petitioners' actions apparently resulted from Perko's violation of a union rule, there is a reasonable likelihood that on these premises the Board would have found such unfair labor practices to have been committed.  See the discussion in the *Borden* case, *ante,* pp. 694–695.

*Second,* even if it be assumed that Perko was not an employee but was solely a supervisor, there is a sufficient probability that the matter would still have been cognizable by the Board so as to compel the relinquishment of state jurisdiction.  It has been held that discharge of a supervisor for failure effectively to coerce employees into renouncing their union affiliation constitutes a violation of § 8 (a)(1) because such a discharge would reasonably cause nonsupervisory employees to fear that they might meet the same fate if they adhered to the union; and in such instances the Board has been sustained in ordering reinstatement of the supervisor with back pay.  *Labor Board* v. *Talladega Cotton Factory, Inc.,* 213 F. 2d 209; cf. *Labor Board* v. *Better Monkey Grip Co.,* 243 F. 2d 836. So here, it may well be that a union's insistence on discharge of a supervisor for failure to comply with union rules would violate § 8 (b)(1)(A) because it would inevitably tend to coerce nonsupervisory employees into observing those rules.  If so, it would surely be within the Board's power under § 10 (c) to order the union to reimburse the supervisor for lost wages.

---

[5] Section 8 (b) of the Act provides that it shall be an unfair labor practice for a labor organization or its agents "(1) to restrain or coerce (A) employees in the exercise of the rights guaranteed in section 7 . . . ," or "(2) to cause or attempt to cause an employer to discriminate against an employee in violation of subsection (a)(3) . . . ." Section 8 (a) provides that it shall be an unfair labor practice for an employer "(3) by discrimination in regard to hire or tenure of employment or any term or condition of employment to encourage or discourage membership in any labor organization . . . ."

Moreover, if a union forces an employer to discharge a supervisor, such conduct may well violate § 8 (b)(1)(B) because it coerces the "employer in the selection of his representatives for the purposes of collective bargaining or the adjustment of grievances." Cf. *International Typographical Union* v. *Labor Board*, 278 F. 2d 6, aff'd in part by an equally divided Court, 365 U. S. 705; *Labor Board* v. *Local 294, International Brotherhood of Teamsters*, 284 F. 2d 893. Whether a "job superintendent" like Perko has sufficient responsibilities with regard to grievances to bring this section into play cannot be ascertained on this record, and in any event would be a question for initial determination by the Board. But the probability that such a violation of § 8 (b)(1)(B) might have occurred, especially in view of Perko's role in the interunion dispute that gave rise to the present controversy, is certainly not insignificant.

We do not of course intimate any view on the merits of any of the underlying substantive questions, that is, whether the union was guilty of a violation of the Act. It is enough to hold, as we do, that it is plain on a number of scores that the subject matter of this lawsuit "arguably" comes within the Board's jurisdiction to deal with unfair labor practices. We therefore conclude that the State must yield jurisdiction and the judgment below must be

*Reversed.*

MR. JUSTICE DOUGLAS and MR. JUSTICE CLARK dissent for the reasons stated in their dissent in No. 541, *Local 100, United Assn. of Journeymen* v. *Borden, ante,* p. 698.

MR. JUSTICE GOLDBERG took no part in the consideration or decision of this case.