327 F.2d 479
 NATIONAL LABOR RELATIONS BOARD, Petitioner,
v.
SHEAR'S PHARMACY, INC., and Retail Drug Employees' Union, Local 1199, Retail, Wholesale and Department Store Union, AFL-CIO, Respondents.
 No. 7.
 Docket 28003.
 United States Court of Appeals Second Circuit.
 Argued October 1, 1963.
 Decided January 24, 1964.
 
 Paula Omansky, N.L.R.B., Washington, D. C. (Stuart Rothman, General Counsel, Dominick L. Manoli, Associate General Counsel, Marcel Mallet-Prevost, Associate General Counsel and Warren M. Davison, N.L.R.B., Washington, D. C., on the brief), for petitioner.
 Lester Fenschel, New York City, for respondent Shear's Pharmacy, Inc.
 Harry Weinstock, New York City (Weinstock & Tauber, New York City, on the brief), for respondent Retail Drug Employees' Union, Local 1199, Retail, Wholesale and Department Store Union, AFL-CIO.
 Before LUMBARD, Chief Judge, and FRIENDLY and SMITH, Circuit Judges.
 FRIENDLY, Circuit Judge.
 
 
 1
 This old case, relating to a collective bargaining agreement made in the spring of 1957 and a refusal to reinstate in the fall of 1958, is back with us after a long voyage through the N.L.R.B. and this court. See original decision and order, July 31, 1960, 128 N.L.R.B. 124; motion of N.L.R.B. to withdraw petition for enforcement in order to permit reconsideration in the light of Local 357, International Brotherhood of Teamsters, etc. v. N. L. R. B., 365 U.S. 667, 81 S.Ct. 835, 6 L.Ed.2d 11 (1961), and Local 60, United Brotherhood of Carpenters, etc. v. N. L. R. B., 365 U.S. 651, 81 S.Ct. 875, 6 L.Ed.2d 1 (1961), granted June 5, 1961; supplemental decision and order, May 31, 1962, 137 N.L.R.B. 451; petition for enforcement dated January 25, 1963. During the voyage the scope of relief demanded has considerably shrunk as a result of the Supreme Court decisions cited; there remain only a finding that a collective bargaining agreement between Shear's Pharmacy, Inc. and Retail Drug Employees' Union, Local 1199, dated March 20, 1957 did not contain the 30-day grace clause for existing employees required by § 8(a) (3) of the National Labor Relations Act, which is not seriously contested, and a finding that Frances Budnick was unlawfully denied reinstatement in December, 1958, which is. There being sufficient evidence to support the Board's finding that the denial of reinstatement violated §§ 8(a) (3) and 8(b) (2), we grant enforcement of its order.
 
 
 2
 Mrs. Budnick was hired as a counter waitress for Shear's on January 21, 1958. Pursuant to the union security agreement in effect between Local 1199 and Shear's, she joined the union, and paid her initiation fees and dues. Early in September, 1958, she left her job because her doctor had advised her to undergo an operation. She testified she made it clear both to Berkhoff, the store manager, and to Mrs. Gordon, the union shop steward, that she was taking a leave of absence and was not quitting, and that Berkhoff had asked when she would return. Berkhoff confirmed her testimony and added that the statement as to taking sick leave was made in the presence of Mrs. Gordon, who, however, testified that Mrs. Budnick had told her she was quitting. The collective bargaining agreement provided that employees on sick leave would, upon their recovery, be returned to their jobs without loss of any rights.
 
 
 3
 During her absence from the job, Mrs. Budnick received payments from the union's welfare fund. When she did not undergo the operation, the union asked her to have a routine checkup by a union doctor which she declined. On November 25 she returned to Shear's to seek reinstatement. Berkhoff, who seemed to have no objection to rehiring her, referred her to the shop steward. Mrs. Gordon appeared at first to have no objection; she told Berkhoff that Mrs. Maniotis, who had been hired as Mrs. Budnick's replacement, could be let go, whereupon Berkhoff gave her notice and, on December 2, told Mrs. Budnick to report for work on December 15. Shortly thereafter Mrs. Gordon told Berkhoff that things were changed, and that he couldn't take Mrs. Budnick back. When he asked why, Mrs. Gordon answered that Mrs. Budnick was not a member of the store union. Berkhoff explained that his practice was to be governed by Mrs. Gordon in all such matters. She was the "interpreter of who has the right to work or not to work in the store. I have to live by that condition."
 
 
 4
 Mrs. Gordon telephoned to Mrs. Budnick on December 5 to tell her she could not have the job, giving as the reasons that Mrs. Maniotis was now a member of the union and that Mrs. Budnick had lost her seniority, that Mrs. Maniotis had five children and needed the job more, and also that Mrs. Budnick had taken sick benefits from the union without having had the operation.
 
 
 5
 Mrs. Budnick then complained to Weiner, the store owner, who advised her to call Epstein, a division director of the union, to have her rights determined. As a result, Epstein went to see Mrs. Budnick along with Mrs. Gordon, and subsequently saw Berkhoff and Mrs. Gordon, both of whom told him that Mrs. Budnick was not entitled to be rehired because she had quit in September. Epstein told Berkhoff that he could take Mrs. Budnick back, but that Mrs. Maniotis also was entitled to the job and that, by dismissing her, the store might incur liability. Berkhoff testified that he wanted Epstein to give him a "directive" to rehire Mrs. Budnick to insure that he would have no trouble thereafter. This Epstein would not do. On January 1, Berkhoff told Weiner that he would prefer Mrs. Budnick over Mrs. Maniotis as an employee. Weiner thereupon wrote a letter to the N.L.R.B., with which Mrs. Budnick had lodged a charge, saying that he was willing to put her back to work provided it was agreeable to the union. Early in January Mrs. Budnick asked Mrs. Gordon to let her see a copy of the union contract, but the latter refused on the ground that she "no longer belonged to the store union." There the matter rested.
 
 
 6
 In its Supplemental Decision and Order, the Board placed its finding of unlawful refusal of reinstatement solely on the ground that "Mrs. Budnick was refused reinstatement because she was in disfavor with Local 1199 for reasons other than her failure to tender periodic membership dues," 137 N.L.R.B. at 452-453. This would clearly be sound with respect to § 8(a) (3) and (b) (2) under the view later taken by a majority of the Board in Miranda Fuel Company, Inc., 140 N.L.R.B. 181, 186-190 (1962), which, however, did not meet with the approval of a majority of this Court, 326 F.2d 172 (1963); apart from all else, the assertion that Mrs. Budnick was no longer a union member, which the shop steward must have known to be false from the outset and which the employer also must have realized to be false before the episode ended, was sufficient proof of arbitrary action by the union and of knowing acquiescence by the employer. However, this record also contains evidence sufficient to sustain the order under the view taken by the majority of this Court in the Miranda case. One declared motivation for Mrs. Gordon's objecting to Mrs. Budnick's reinstatement was that the latter had drawn welfare benefits without having earned them by submitting to the surgery the prospect of which had led to her leaving the job. The union's "disfavor" was thus rooted, at least in part, in Mrs. Budnick's violation of a supposed union rule other than one requiring the prompt tender of dues and initiation fees. So far as the union is concerned, the Board's order was thus authorized on the same grounds as those upheld as to Boston and Fowler in Radio Officers' Union v. N. L. R. B., 347 U.S. 17, 40, 42, 74 S.Ct. 323, 98 L.Ed. 455 (1954). See also Local 207, International Association of Bridge, etc. v. Perko, 373 U.S. 701, 707, 83 S.Ct. 1429, 10 L.Ed.2d 646 (1963), where the same point was made as to § 8(b) (1) (A). Although the record contains no direct testimony that Shear's knew of this motivation, the Board could properly have inferred this, for, as it could properly have found, Berkhoff must have known that the reason given by Mrs. Gordon and himself to Epstein, namely, that Mrs. Budnick had quit her job, did not accord with the facts. An employer which carries its submission to a union shop steward to the point of cooperating in a false statement of reasons for an employee's loss of reinstatement or seniority rights can hardly insist on ignorance that the union motivation was in fact a forbidden one. We have no occasion to consider whether still other bases for sustaining the order may exist.
 
 
 7
 Enforcement granted.