337 F.2d 68
 William C. LINN, Plaintiff-appellant,
v.
UNITED PLANT GUARD WORKERS OF AMERICA, LOCAL 114, a labor
association, Leo J.Doyle, Benton I. Bilbrey, W. T.
England, jointly and severally,
Defendants-Appellees.
 No. 15548.
 United States Court of Appeals Sixth Circuit.
 Oct. 13, 1964.
 
 Donald F. Welday, Jr., Southfield, Mich. (Welday, O'Leary, Goldstone & Bichan, Southfield, Mich., on the brief), for appellant.
 Nancy Jean Van Lopik, Detroit, Mich. (Livingston, Gregory, Van Lopik & Cranefield, Winston L. Livingston, Detroit, Mich., on the brief), for appellees.
 Before CECIL and O'SULLIVAN, Circuit Judges, and MILLER, District judge.
 O'SULLIVAN, Circuit Judge.
 
 
 1
 This appeal presents the question whether the National Labor Relations Board has preempted the diversity jurisdiction of a district court to entertain an action to recover damages for libel committed by a union and its officers in the course of, and arising out of tactics employed in, a union's organization campaign. The District Court so held in dismissing, on motion, such an action commenced by a management official against a union and its officers. On the authority of San Diego Bldg. Trades Council v. Garmon, 359 U.S. 236, 79 S.Ct. 773, 3 L.Ed.2d 775 (1959), and the Supreme Court's decisions following Garmon, we affirm.
 
 
 2
 Plaintiff-appellant, William C. Linn, was at the times involved in 1962 an assistant general manager for the North Central Region of Pinkerton's National Detective Agency, Inc. The complaint charged that during a campaign to organize Pinkerton's employees, defendant-appellee, United Plant Guard Workers of America, Local 114, and defendants-appellees, Benton I. Bilbrey, President of the union local and W. T. England, its Vice-President, and one Leo J. Doyle, a Pinkerton guard, conspired to and did utter, publish, circulate and mail written matter maliciously libelling and defaming plaintiff Linn. For consideration of the question before us we accept that these statements were false, malicious, clearly libelous and damaging to plaintiff Linn, albeit they were relevant to the union's campaign.
 
 
 3
 Linn's employer filed an unfair labor practice charge against the union based upon the libelous material, but the Board's Acting Regional Director refused to issue a complaint upon his determination that 'there is no evidence that the union was involved in any respect in the drafting and circulation of the leaflets.' This refusal was affirmed by the N.L.R.B. Office of Appeals on February 13, 1963. On June 5, 1963, the District Judge filed a memorandum opinion supporting his order of dismissal stating:
 
 
 4
 'If Local 114 or its President or Vice-President were in fact responsible for distributing to Pinkerton's employees a false and defamatory publication which would tend to affect adversely the relations between Pinkerton's and its employees, this would arguably constitute an unfair labor practice under Section 8(b) of the National Labor Relations Act. * * *'
 
 
 5
 and from this reasoned that the District Court was 'without authority to give plaintiffs any relief against the moving defendants' (the union and its officers) under the now familiar language of Garmon: 'when an activity is arguably subject to 7 or 8 of the Act, the States as well as the federal courts must defer to the exclusive competence of the National Labor Relations Board if the danger of state interference with national policy is to be averted.' 359 U.S. 245, 79 S.Ct. 779.
 
 
 6
 The Garmon decision appears to have been accepted as setting at rest the uncertainties that had remained as to just what traditional remedies could still be employed in the state courts to redress wrongs committed in the collisions between employers and employees' unions. It has been assumed that since Garmon the states can intrude into this field only when some 'compelling state interest' such as 'the maintenance of domestic peace' called for exercise of a state's traditional remedies. And it likewise is assumed that only violence or the threat of violence will permit a state court to act. The considerations urged to sustain judicial jurisdiction in the present case were tentatively reflected in pre-Garmon decisions of the Supreme Court, and after full consideration were limited to the particular circumstances of those decisions by Garmon and subsequent decisions. Thus in International Union, United Automobile, etc. Workers v. Russell, 356 U.S. 634, 78 S.Ct. 932, 2 L.Ed.2d 1030 (1958), and United Constr. Workers, etc. v. Laburnum Constr. Corp., 347 U.S. 656, 74 S.Ct. 833, 98 L.Ed. 1025 (1954), the Supreme Court affirmed state court judgments for damages inflicted by the tortious conduct of labor unions committed as part of their organizational efforts. While each of these case involved violence or threats of violence, neither of them relied on violence as the essential ingredient of permissible state action. Rather, it appeared that state jurisdiction was sustained because of the inadequacy of the National Labor Relations Act as a means of compensating for damaging torts. The opening paragraph of Laburnum announced the breadth of its holding.
 
 
 7
 'The question before us is whether the Labor Management Relations Act, 1947, has given the National Labor Relations Board such exclusive jurisdiction over the subject matter of a common-law tort action for damages as to preclude an appropriate state court from hearing and determining its issues where such conduct constitutes an unfair labor practice under that Act. For the reasons hereafter stated, we hold that it has not.' 347 U.S. 657, 74 S.Ct. 834, 98 L.Ed. 1027.
 
 
 8
 Laburnum further expressed the view that 'to the extent * * * that Congress has not prescribed procedure for dealing with the consequences of tortious conduct already committed, (as distinguished from preventive procedure), there is no ground for concluding that existing * * * liabilities for tortious conduct have been eliminated.' 347 U.S. 665, 74 S.Ct. 838, 98 L.Ed. 1031. The Supreme Court also there took occasion to distinguish between its holding of Federal preemption in Garner v. Teamsters, etc. Local Union No. 776, 346 U.S. 485, 74 S.Ct. 161, 98 L.Ed. 228 (1953) and its approval of state jurisdiction in the Laburnum case then before, it, saying that,
 
 
 9
 'In the Garner Case, Congress had provided a federal administrative remedy, supplemented by judicial procedure for its enforcement, with which the state injunctive procedure conflicted. Here Congress has neither provided nor suggested any substitute for the traditional state court procedure for collecting damages for injuries caused by tortious conduct. For us to cut off the injured respondent from this right of recovery will deprive it of its property without recourse or compensation.' 347 U.S. 663-664, 74 S.Ct. 837, 98 L.Ed. 1031.
 
 
 10
 The decision in International Union, United Automobile, etc. Workers v. Russell, 356 U.S. 634, 78 S.Ct. 932 (1958) appeared to express the same concern for retaining a state's right to redress damages inflicted on its citizens by tortious misconduct committed during the course of labor strife. As in Laburnum, the tortious conduct contained a threat of violence, since 'the (picket) line consisted of persons standing along the street or walking in a compact circle across the entire traveled portion of the street. Such pickets, on July 18, by force of numbers, threats of bodily harm to Russell and of damage to his property, prevented him from reaching the plant gates. At least one striker took hold of Russell's automobile.' While mentioning the threat of violence, it does not appear that violence was the sole reason for allowing Russell to recover damages for tortious interference with his means of earning a livelihood. Rather, the Court seemed to emphasize the lack of power in the NLRB to grant adequate relief. It said, 'this section (10(c) of the Act) is far from being an express grant of exclusive jurisdiction superseding common-law actions, by either an employer or an employee, to recover damages caused by the tortious conduct of a union. * * * We conclude that an employee's right to recover, in the state courts, all damages caused him by this kind of tortious conduct cannot fairly be said to be pre-empted without a clearer declaration of congressional policy than we find here.' 356 U.S. 642, 646, 78 S.Ct. 939.
 
 
 11
 Without any intervening relevant amendment to the National Labor Relations Act, however, the Court in Garmon limited the application of Laburnum and Russell to torts involving violence.
 
 
 12
 'It is true that we (in Laburnum and Russell) have allowed the States to grant compensation for the consequences, as defined by the traditional law of torts, of conduct marked by violence and imminent threats to the public order. * * * State jurisdiction has prevailed in these situations because the compelling state interest, in the scheme of our federalism, in the maintenance of domestic peace is not overridden in the obsence of clearly expressed congressional direction. We recognize that the opinion in United Construction Workers, etc. v. Laburnum Const. Corp., 347 U.S. 656, (74 S.Ct. 833, 835, 98 L.Ed. 1025), found support in the fact that the state remedy had no federal counterpart. But that decision was determined, as is demonstrated by the question to which review was restricted, by the 'type of conduct' involved, i.e., 'intimidation and threats of violence.' In the present case there is no such compelling state interest.' 359 U.S. 247-248, 79 S.Ct. 781.
 
 
 13
 The plaintiff here argues that we should recognize as a 'compelling state interest' the protection of an individual's good name and reputation and thus come within the one exception to the preemptive rule of Garmon. It is indeed clear that physical assault and battery and libelous assault upon a citizen's good name are both torts that cannot be compensated by a 'cease and desist' order of the NLRB. An individual might quickly recover from the bruises and wounds of a physical assault and at little expense have a crumpled fender bumped out, but a lifetime may not be sufficient to restore a reputation hurt by the circulation of a vicious libel. We are persuaded, however, that Garmon has drawn the distinction which permits the one to be remedied by traditional court action and limits the other to the relief, if any, that may come from an order of the NLRB. And if a Regional Director's refusal to issue a complaint is sustained by the Board's General Counsel as happened to the company's charge in this case, the libelled individual is at the end of the remedial road. Compare Dunn v. Retail Clerks Internat'l Ass'n, 307 F.2d 285 (CA6, 1962).
 
 
 14
 Our conclusion that Garmon has foreclosed plaintiff's entry into the courts is supported by the later decisions in Local 100, United Ass'n of Journeymen & Apprentices v. Borden, 373 U.S. 690, 83 S.Ct. 1423, 10 L.Ed.2d 638 (1963) and Local No. 207, Internat'l Ass'n of Bridge, etc. Workers v. Perko, 373 U.S. 701, 83 S.Ct. 1429, 10 L.Ed.2d 646 (1963) wherein, in obedience to Garmon, state courts were denied jurisdiction to entertain actions by workmen for intentional and tortious interference by a union with their means of earning a livelihood. Such interference involved no physical violence and therefore the one exception recognized in Garmon was absent. We think that there would be as 'compelling' a state interest to protect the workman's right to earn his wages as to protect his employer's good name, but such an interest was found insufficient justification for state jurisdiction in Borden and Perko.
 
 
 15
 Such courts as have had occasion since Garmon to consider the question of federal preemption of libel suits arising out of union organizational activity have concluded that state jurisdiction does not exist. Hill v. Moe, 367 P.2d 739 (Alaska 1961), cert. denied, 370 U.S. 916, 82 S.Ct. 1554, 8 L.Ed.2d 498 (1962); Blum v. International Ass'n of Machinists, 42 N.J. 389, 201 A.2d 46 (1964); Schnell Tool & Die Corp. v. United Steelworkers, 200 N.E.2d 727 (Ohio Com.Pl.1964). The only expression of a contrary view is found in the opinion of the three dissenters in Blum v. Internat'l Ass'n of Machinists, AFL-CIO, supra. We are satisfied that under Garmon these dissenters were wrong. We respect their dissent, however, as an understandable cry of anguish.
 
 
 16
 Our holding in this case is of course limited to a suit for libelous statements growing out of and relevant to a union's campaign to organize the employees of an employer subject to the National Labor Relations Act. We mention too that it is not necessary for us to inquire whether the individual defendant, Doyle, a Pinkerton employee, could have obtained dismissal by appropriate motion. He did not so move.
 
 
 17
 Judgment affirmed.