MOOI ROOFING COMPANY *v.* DE YOUNG.

1. JUDGMENT—SUMMARY JUDGMENT—PLEADING.

   All well-pleaded material allegations in a complaint are to be taken as true in deciding a motion for summary judgment (GCR 1963, 117).

2. LIBEL AND SLANDER—PLEADING—LABOR DISPUTE.

   Employer's complaint *held,* to have stated a cause of action in libel, where it alleged that defendant union members had carried placards at a job site stating plaintiff was paying substandard wages, causing plaintiff and its employees to leave the job site, plaintiff informed defendants that plaintiff was a union employer and paying a proper wage under a labor contract but that the following day there was a repetitive use of the placard.

3. SAME—MALICE—LABOR RELATIONS—JURISDICTION OF STATE COURT.

   A State court has jurisdiction to apply State remedies where either party to a labor dispute circulates false and defamatory statements during a union organizing campaign, if the complainant pleads and proves that the statements were made with malice and injured him.

REFERENCES FOR POINTS IN HEADNOTES

[1]  41 Am Jur, Pleading §§ 340–343.
[2]  33 Am Jur, Libel and Slander § 67.
[3]  33 Am Jur, Libel and Slander §§ 67, 111.
[4]  33 Am Jur, Libel and Slander § 67; 41 Am Jur, Pleading §§ 340–343.

4. Labor Relations—Libel and Slander—Federal Pre-emption—
. Summary Judgment.

    Action for defamation arising out of a labor dispute *held*, not
      pre-empted by the Federal act governing the national labor
    relations board, hence, granting motion for summary judgment
    for defendant union and its officers was improper (29 USCA,
    § 151 *et seq.;* GCR 1963, 117).

Appeal from Ottawa; Ray (Chester A.), J. Sub-
mitted June 7, 1967, at Grand Rapids. (Docket No.
3,376.) Decided December 8, 1967.

Complaint by Mooi Roofing Company, a Michigan
corporation, against Edward V. De Young and Local
Union No. 211 of United Slate, Tile and Composition
Roofers, Damp and Waterproof Workers Associa-
tion of Grand Rapids affiliated with AFL–CIO.
Summary judgment for defendants. Plaintiff ap-
peals. Reversed and remanded.

*Vander Veen, Freihofer & Cook (Donald F.
Oosterhouse,* of counsel), for plaintiff.

*Donald J. Prebenda,* for defendants.

  Holbrook, P. J. Plaintiff, Mooi Roofing Company,
brought a libel action against defendants on No-
vember 1, 1966, in the Ottawa county circuit court.
Summary judgment was entered against plaintiff,
whereupon appeal has been made to this Court.

  The facts pertinent to plaintiff's appeal follow:
On October 18, 1966, defendant Edward V. De Young,
a business agent of defendant Local #211 of United
Slate, Tile and Composition Roofers, Damp and
Waterproof Workers Association of Grand Rapids,
picketed a job site on which plaintiff and its em-
ployees were working. A placard was carried by
defendant Edward V. De Young which stated, "Mooi

Roofing Company is paying substandard wages".
As a result, plaintiff and its employees left the job
site.

At a meeting held the next day, plaintiff requested
defendants to discontinue carrying the placard at
the job site, informing defendants that plaintiff was
a union employer and paying a proper wage under
provisions of a labor contract with a certified bar-
gaining agent (union). The following day, October
20, plaintiff and its employees returned to the job
site; the picketing was resumed and the placard
again displayed; plaintiff and its employees again
left the job site.

On November 1, 1966, plaintiff filed its complaint
in this suit alleging libel and about the same time,
filed a complaint with the regional office of the Na-
tional Labor Relations Board, charging that defend-
ants were guilty of an unfair labor practice under
the Federal labor law then in force. On November
18, 1966, in the NLRB proceeding, a settlement
agreement was entered into by plaintiff and defend-
ants whereby defendants agreed to withdraw their
pickets and also to recognize the plaintiff to be a
union employer. Notices pertaining to the settling
of the dispute were posted at the job site.

On November 28, 1966, defendants filed a motion
for summary judgment, in the instant case, which
was later amended, and plaintiff filed an answer to
the motion and the amended motion for summary
judgment. A hearing was held January 27, 1967.
Defendants asserted that summary judgment should
be granted because (1) the complaint failed to state
a cause of action, *i.e.*, the action could not be sus-
tained because of plaintiff's failure to plead malice
with sufficient particularity, and (2) the Ottawa
county circuit court lacked jurisdiction because a
defamation action arising out of a labor dispute is

pre-empted by Federal labor law—the NLRB has exclusive jurisdiction.

The trial court refused to grant summary judgment on the first of defendants' claims, but granted summary judgment against plaintiff on the second. Since both these grounds have been set forth as questions for review—the second by plaintiff and the first by defendants—consideration will be given to each separately.

1. *Does plaintiff's complaint state a cause of action?*

The trial court determined that plaintiff's complaint should not be dismissed or summary judgment be granted because a cause of action was stated. The written opinion of the trial court states in part as follows:

"As to the first ground stated by the defendants, motions for summary judgment under GCR 1963, 117 have to be read with all of the pleadings in the cause fully in mind, *Durant* v. *Stahlin* (*Appeal in re Van Dusen, Elliott, Romney*) (1965), 375 Mich 628, at pp 645, 646. Applying the rules for a summary judgment for libel and defamation as laid down in that case, the court finds that the affidavit in support of the [amended] motion for summary judgment, while it may controvert the first occurrence of the alleged defamation on October 18, does not controvert the alleged defamation occurring on October 20, 1966, after the defendant was informed that plaintiff was a union employer, and as a result, the complaint alleges sufficient facts concerning the last occurrence, from which an inference could be drawn that the act of placard carrying on October 20, 1966, was in fact malicious; and that the complaint should not be dismissed or the summary judgment granted on the basis that it does not state a cause of action."

After careful examination of defendant's amended motion for summary judgment, keeping fully in mind

all of the pleadings entered[1] (*Durant* v. *Stahlin* [*Appeal in re Van Dusen, Elliott, Romney*], *supra*) we conclude that the trial court's determination was a proper one. Plaintiff's complaint states a cause of action in libel.

2. *Does the Ottawa county circuit court lack jurisdiction by reason of Federal pre-emption?*

Plaintiff candidly admits that his appeal to this Court rests entirely on the recent United States Supreme Court case of *Linn* v. *United Plant Guard Workers* (1966), 383 US 53 (86 S Ct 657, 15 L ed 2d 582).[2] Therein, plaintiff Linn, an officer of an employer sought to be organized by the defendant union, commenced an action for libel based on defamatory statements which were made during the course of a labor dispute relating to management conduct. The district court dismissed plaintiff Linn's complaint on the ground that the NLRB had exclusive jurisdiction over the subject matter. The Court of Appeals affirmed. (*Linn* v. *United Plant Guard Workers* [CA 6, 1964], 337 F2d 68). The Supreme Court reversed in a 5-to-4 decision the 6th Circuit Court of Appeals' affirmance. The majority opinion, written by Mr. Justice Clark, stated in part as follows (p 55):

"We conclude that where either party to a labor dispute circulates false and defamatory statements during a union organizing campaign, the court does have jurisdiction to apply State remedies if the com-

---

[1] Paragraph 8 of plaintiff's complaint states as follows:

"That at the meeting of October 19, 1966, defendant Edward V. De Young stated to plaintiff's officers and agents that the placard would continue to be carried until plaintiff signed a contract with Local #211, even though said defendant knew full well that plaintiff had a contract with another labor organization and was not legally free to sign any contract with Local #211." See *Chapman* v. *Romney* (1967), 6 Mich App 36 wherein it is stated at p 38: "In a motion for summary judgment, it is axiomatic that all well-pleaded material allegations contained in a complaint are to be taken as true."

[2] Also, see *San Diego Building Trades Council* v. *Garmon* (1957), 359 US 236 (79 S Ct 773, 3 L ed 2d 775).

plainant pleads and proves that the statements were made with malice and injured him."

Defendants contend that *Linn* v. *United Plant Guard Workers, supra,* applies only to natural persons who complain of being libelled.

To restrict the *Linn* decision in such a manner would result in an incongruity—a State court could entertain. a defamation suit arising out of a labor dispute where a natural person is maliciously injured, but not where an employer or union is defamed. The majority opinion in *Linn, supra,* indicates the contrary as stated on p 66 as follows:

"Finally, it has been argued that permitting State action here would impinge upon national labor policy. because the availability of a judicial remedy for malicious libel would cause *employers and unions* to spurn appropriate administrative sanctions for contemporaneous violations of the act.[3] We disagree. When the board and State law frown upon the publications of malicious libel, albeit for different reasons, it may be expected that *the injured party* will request both administrative and judicial relief." (Emphasis supplied.)

The *Linn* decision is considered in an excellent and comprehensive case note entitled "Labor Relations—Federal Pre-emption of Defamation Cases," appearing in 45 NC L Rev (1966), p 274.[4] The case note presents the background leading to the *Linn* decision and its extent and import, as follows (pp 275–280):

"In order to determine the competency of States to regulate libel and slander in a labor dispute context, the Court looked for authority in a score of pre-emption cases it had handed down in the past

---

[3] 29 USCA § 141 *et seq.*—Reporter.

[4] Also, see 18 Maine L Rev (1966), p 273, "Labor Law—Pre-emptive Jurisdiction of NLRB—Common Law Libel Action Arising Out of Labor Dispute."

15 years. The leading case of *Garner* v. *Teamsters Union*[5] held that where the activity obviously fell within the NLRB's jurisdiction to prevent unfair labor practices, the State through its courts could not adjudge the same controversy and extend its own form of remedy. More important than the holding itself was the approach the Court took. The Court no longer concerned itself with the merits of the case, but directed itself solely to the problem of Federal-State relations under the act. The breadth of the new approach became more apparent in 1955 with *Weber* v. *Anheuser-Busch, Inc.,*[6] where the Court extended Federal pre-emption to cover all activity that could reasonably be deemed to come within the prohibitions or protections afforded by the act. For several years following *Weber,* the Court adhered to its test of reasonable applicability of the act, but still found several situations where the State authority had not been exclusively absorbed by the Federal enactment. The 1959 *San Diego Building Trades Council* v. *Garmon*[7] decision extended the pre-emption doctrine to its present proportions and put to rest most of the elaborate distinctions which had developed around prior holdings. The Court directed attention to the single issue of whether the activity involved is 'arguably subject to' the protections of section 7 or the prohibitions of section 8 of the act. Under this test, both Federal and State courts must defer to the exclusive competence of the NLRB in all cases where an argument could be made that the activity involved was subject to the provisions of the labor management relations act. Once the primary jurisdictional question of whether the conduct called into question may reasonably be asserted to be subject to NLRB cognizance is decided in the affirmative, State causes of action are totally precluded regardless of the remedy sought. The pre-emption principle applies to dam-

---

5 (1953), 346 US 485 (74 S Ct 161, 98 L ed 228).
6 (1955), 348 US 468 (75 S Ct 480, 99 L ed 546).
7 (1959), 359 US 236 (79 S Ct 773, 3 L ed 2d 775).

age awards as well as to injunctions, to State court proceedings as well as to regulation by a State agency, and to actions based upon common law or statutes of general application as well as to proceedings under a State labor relations statute.

"Although *Garmon* significantly enlarged the primary jurisdiction of the NLRB, it clearly established two exceptions to the basic rule of pre-emption. If the activity regulated was a merely peripheral concern of the labor management relations act, State law and remedies could be applied. Cited as representative was *International Ass'n of Machinists* v. *Gonzales*,[8] but the Court did not suggest what types of activity other than arbitrary expulsion from union membership would constitute a 'merely peripheral concern', and in two 1963 decisions, *Local 100, United Ass'n of Journeymen* v. *Borden*[9] and *Local 207, Int'l Ass'n of Bridge Workers* v. *Perko*,[10] the Court restricted the internal activities exception almost to the point of extinction. Also excepted from the pre-emption doctrine were 'interests so deeply rooted in local feeling and responsibility that, in the absence of compelling congressional direction, we could not infer that congress had deprived the States of the power to act.' Prior to *Linn,* the only State interest found compelling enough to allow State regulation, in spite of the fact that the activity might also constitute an unfair labor practice, was the regulation of intimidation, violence, and other threats to the peace. The *Garner-Weber-Garmon* line of cases clearly recognized that the State may exercise 'its historic power over such traditionally local matters as public safety and order and the use of the streets and highways' by any method consistent with its police powers. But except for situations earmarked by violence, the Court continued to pursue a policy of rigorous pre-emption of State intervention into the labor field whether the regulation was applied

---

8 (1958), 356 US 617 (78 S Ct 923, 2 L ed 2d 1018).
9 (1963), 373 US 701 (83 S Ct 1429, 10 L ed 2d 646).
10 (1963), 373 US 701 (83 S Ct 1429, 10 L ed 2d 646).

through injunction, damages, or criminal contempt sanctions.

"In *Linn* the Court added new vitality to the two exceptions and expressly brought State defamation actions within the exceptions recognized in *Garmon*.[11] The Court reasoned that State courts handling libel suits deal with an interest entirely different from that with which the NLRB deals. The board is not interested in protecting reputation or deterring violence; it looks only to the coercive or misleading nature of the statements surrounded by other circumstances in order to determine an unfair labor practice charge, or whether the employees had been so misled that a fair election had become impossible. Since the board is unconcerned with the defamatory character[12] of the statement, a judicial determination that the statements were libelous in character would have no effect upon the board's jurisdiction over the merits of the labor dispute itself. Thus the injury caused to an individual by a defamatory statement is merely incidental to the board's inquiry and the application of State remedies would be a 'merely peripheral concern of the labor management relations act.'[13]

---

[11] "We similarly conclude that a State's concern with redressing malicious libel is 'so deeply rooted in local feeling and responsibility' that it fits within the exception specifically carved out by *Garmon*." *Linn* v. *United Plant Guard Workers, supra,* at p 62.

[12] "Nor should the fact that defamation arises during a labor dispute give the board exclusive jurisdiction to remedy its consequences. The malicious publication of libelous statements does not in and of itself constitute an unfair labor practice. While the board might find that an employer or union violated § 8 by deliberately making false statements, or that the issuance of malicious statements during an organizing campaign had such a profound effect on the election as to require that it be set aside, it looks only to the coercive or misleading nature of the statements rather than their defamatory quality." *Linn* v. *United Plant Guard Workers, supra,* at p 63.

[13] "In the light of these considerations it appears that the exercise of State jurisdiction here would be a 'merely peripheral concern of the labor management relations act', provided it is limited to redressing libel issued with knowledge of its falsity, or with reckless disregard of whether it was true or false." *Linn* v. *United Plant Guard Workers, supra,* at p 61.

·"The Court further concluded that the States' concern with redressing malicious libel is 'so deeply rooted in local feeling and responsibility "that an overriding State interest"  \*  \*  \*  should be recognized.'[14] The traditional justification for libel actions, namely the tendency of libel or slander to cause a breach of the peace, is closely related to the breach of the peace line of cases recognized in *Garmon*. The Supreme Court itself has recognized maintenance of the peace as one of the purposes of civil actions for libel. Moreover, the State is traditionally concerned with providing a peaceful forum to which individuals whose reputations have been damaged by false and injurious statements can bring their claims. Balanced against such meaningful State interests, the use of the known lie as a tool has so little social utility that it should be afforded the minimum protection consistent with national labor policy."[15]

Defendants do not contend that an employer may not be defamed. See Prosser on Torts (3d ed), p 762. We conclude that a suit for defamation arising out of a labor dispute is not pre-empted by the Federal act[16] governing the NLRB, and therefore the

---

[14] "Moreover, we believe that 'an overriding State interest' in protecting its residents from malicious libels should be recognized in these circumstances." *Linn* v. *United Plant Guard Workers, supra,* at p 61.

[15] "The most repulsive speech enjoys immunity provided it falls short of a deliberate or reckless untruth. But it must be emphasized that malicious libel enjoys no constitutional protection in any context. After all, the labor movement has grown up and must assume ordinary responsibilities. The malicious utterance of defamatory statements in any form cannot be condoned, and unions should adopt procedures calculated to prevent such abuses.  \*  \*  \*

"As was said in *Garrison* v. *Louisiana,* 379 US 64, 75 (85 S Ct 209, 216, 13 L ed 2d 125, 133): 'The use of the known lie as a tool is at once at odds with the premises of democratic government and with the orderly manner in which economic, social, or political change is to be effected.' We believe that under the rules laid down here it can be appropriately redressed without curtailment of State libel remedies beyond the actual needs of national labor policy." *Linn* v. *United Plant Guard Workers, supra,* at pp 63, 67.

[16] 29 USCA § 141 *et seq.*—Reporter.

granting of the motion for summary judgment in favor of defendant was not proper.

Reversed and remanded for further proceedings not inconsistent with this opinion. Costs to plaintiff-appellant.

BURNS and WISE, JJ., concurred.