547 F.2d 159
 93 L.R.R.M. (BNA) 2958, 79 Lab.Cas. P 11,743
 AMERICAN BROADCASTING COMPANIES, INC. et al., Petitioners,
and
Association of Motion Picture and Television Producers,
Inc., Intervenor,
v.
NATIONAL LABOR RELATIONS BOARD, Respondent.
NATIONAL LABOR RELATIONS BOARD, Petitioner,
and
American Broadcasting Companies, Inc., et al., Intervenors,
v.
WRITERS GUILD OF AMERICA, WEST, INC., Respondent.
 Nos. 604, 1161, Dockets 75-4089, 75-4121.
 United States Court of Appeals,
Second Circuit.
 Argued May 10, 1976.
Decided Nov. 22, 1976.
 
 John G. Elligers, Atty., N.L.R.B., Washington, D.C. (John S. Irving, Gen. Counsel, John E. Higgins, Jr., Deputy Gen. Counsel, Elliott Moore, Deputy Assoc. Gen. Counsel, N.L.R.B., Washington, D.C., on the brief), for petitioner-respondent N.L.R.B.
 Richard N. Fisher, Los Angeles, Cal. (Steven C. Babb, and O'Melveny & Myers, Los Angeles, Cal., on the brief), for petitioners-intervenors American Broadcasting Companies, Inc., CBS, Inc., and National Broadcasting Co., Inc.
 Harry J. Keaton, Los Angeles, Cal. (Andrew B. Kaplan, and Mitchell, Silberberg & Knupp, Los Angeles, Cal., on the brief), for intervenor Association of Motion Picture and Television Producers, Inc.
 Julius Reich, Los Angeles, Cal. (Reich, Adell & Crost, and Selvin & Weiner, Los Angeles, Cal., on the brief), for respondent Writers Guild of America, West, Inc.
 Before MOORE and TIMBERS, Circuit Judges, and NEWMAN, District Judge.*
 PER CURIAM:
 
 
 1
 On this petition to review by the networks (American Broadcasting Companies, Inc., CBS, Inc., and National Broadcasting Company, Inc.), and an application by the National Labor Relations Board to enforce an order of the Board, 217 N.L.R.B. No. 159 (1975), requiring the union (Writers Guild of America, West, Inc.) to cease and desist from certain conduct during a strike found to be in violation of Section 8(b)(1)(B) of the National Labor Relations Act and to take certain affirmative action to remedy the violations, we find the essential issue to be whether as a matter of law the Board correctly applied Section 8(b) (1)(B) in concluding that the union restrained and coerced the employers by threatening to blacklist and discipline and by fining and expelling from membership certain supervisory personnel who crossed the picket lines during a strike.
 
 
 2
 For substantially the reasons set forth in the dissenting opinion of Board Member John H. Fanning, 217 N.L.R.B. No. 159, we hold that the Board as a matter of law incorrectly applied Section 8(b)(1)(B) to the instant case and we deny enforcement of the Board's order. See Florida Power & Light Co. v. International Brotherhood of Electrical Workers, Local 641, 417 U.S. 790 (1974).
 
 
 3
 Enforcement denied.
 
 MOORE, Circuit Judge (dissenting):
 
 4
 I cannot join in the conclusion of the majority that enforcement should be denied because in my opinion the facts and the law clearly call for an opposite result, i. e., the granting of enforcement.
 
 
 5
 Briefly, three broadcasting companies, American Broadcasting Companies, Inc., CBS, Inc. and National Broadcasting Company, Inc., certain of their employees (writers of material for live, nationally-broadcast television programs), Writers Guild of America, West Inc. (the "Guild") and the National Labor Relations Board (the "Board") and an Intervenor are involved. In March 1973 the Guild called a strike. Many of the Guild's members were employees vested with supervisory and managerial functions. Certain of these employees crossed the Guild's picket lines. Against this group the Guild brought disciplinary proceedings which resulted in the imposition of fines and other sanctions. The name given to this category of employee, namely, supervisors or management representatives, is "hyphenates". Various hearings were held between May 21, 1973 and January 25, 1974 before an Administrative Law Judge ("ALJ") which resulted in a lengthy opinion, dated September 18, 1974, wherein he found that the Guild, by its actions, restrained and coerced the employees of Guild members who were hyphenates in the selection of their representatives for the purpose of collective bargaining or the adjustment of grievances. The ALJ order contained certain "cease and desist" provisions relative to any employee whose function involved supervisory or managerial tasks and enjoined disciplinary proceedings against such group by way of fines or otherwise.
 
 
 6
 When the matter came before the Board on the record, briefs and exceptions to the ALJ decision, a panel of the Board affirmed "the rulings, findings and conclusions of the Administrative Law Judge to the extent consistent herewith (its opinion)" and adopted the recommended ALJ order. A third member of this panel dissented. The Board sustained "the complaint's alleged violations of Section 8(b)(1)(B) of the Act (the National Labor Relations Act), in toto."
 
 
 7
 There is no disputed question of fact as to the threats and disciplinary action by way of fines against the hyphenates. This in terrorem action by the Guild would inevitably have an effect of inclining these employees towards their Unions in matters supervisory and managerial when they should have been free of any coercive influences.
 
 
 8
 The majority's reliance on Florida Power & Light Co. v. International Brotherhood of Electrical Workers, Local 641, 417 U.S. 790, 94 S.Ct. 2737, 41 L.Ed.2d 477 (1974) is misplaced. In Florida Power, the Court of Appeals (159 U.S.App.D.C. 272, 487 F.2d 1143, 1157 (1973)) stated:
 
 
 9
 "When a supervisor acts as such he is a representative of management, and as such he should be immune from union discipline. The unions participating in the present cases conceded as much at oral argument when they agreed that when a supervisor crosses a picket line to perform supervisory work he remains immune from discipline." (Emphasis in original.)
 
 
 10
 In the Supreme Court, the Court made it clear that there is a definite cleavage between supervisory work and "rank-and-file" work, and stated:
 
 
 11
 "The question to be decided is whether the unions committed unfair labor practices under § 8(b)(1)(B) when they disciplined their supervisor-members for crossing the picket lines and performing rank-and-file struck work during lawful economic strikes against the companies." 17 U.S. at 792, 94 S.Ct. at 2738 (Emphasis added).
 
 
 12
 The basis of the Supreme Court's decision was made even clearer when it stated:
 
 
 13
 "The conclusion is thus inescapable that a union's discipline of one of its members who is a supervisory employee can constitute a violation of § 8(b)(1) (B) only when that discipline may adversely affect the supervisor's conduct in performing the duties of, and acting in his capacity as, grievance adjuster or collective bargainer on behalf of the employer." 417 U.S. at 804-5, 94 S.Ct. at 2744.
 
 
 14
 The Court of Appeals should not usurp the function of the ALJ and Board unless there is a complete absence of evidence to support its findings. Both concluded that the hyphenates were bona fide supervisors and had managerial functions. Since there is more than adequate proof to support these findings, I would enforce the Board's order.
 
 
 
 *
 Hon. Jon O. Newman, United States District Judge, District of Connecticut, sitting by designation