**550**

NATIONAL LABOR RELATIONS
BOARD, Petitioner,

v.

LOCAL UNION NO. 725 OF the UNITED
ASSOCIATION OF JOURNEYMEN
AND APPRENTICES OF the PLUMB-
ING AND PIPEFITTING INDUSTRY
OF the UNITED STATES AND CANA-
DA, AFL–CIO, Respondent.

No. 76–4058.

United States Court of Appeals,
Fifth Circuit.

May 5, 1978.

Elliott Moore, Dep. Assoc. Gen. Cnsl.,
Paul Spielberg, Elinor Stillman, Attys.,
John S. Irving, Gen. Counsel, John E. Hig-
gins, Jr., Deputy Gen. Counsel, N. L. R. B.,
Washington, D. C., for petitioner.

Allan M. Elster, North Miami Beach, Fla.,
for respondent.

Before BROWN, Chief Judge, and RO-
NEY and FAY, Circuit Judges.

RONEY, Circuit Judge:

This case raises the question of whether
we should enforce a National Labor Rela-
tions Board order to remedy an "unfair
labor practice" by a union when the fault of
the union lay in its refusal to refer an
employee union member to a job of fore-
man, a supervisory job outside of the scope
of the National Labor Relations Act, and
whether a remedy of backpay can be based
on the loss of a supervisor's pay. Resolving
these legal issues against the union, and
finding substantial evidence on the record
as a whole to support the factual finding
that the refusal to refer was a violation of a
collective bargaining agreement, and that
the union threatened reprisals if the em-
ployee persisted in asserting his rights, we
enforce the Board's order, including the
backpay provisions.

This dispute arose in early 1975. Powers
Regulator Company, a construction contrac-
tor, wanted a foreman for a crew that
would install a new, electronically-sophisti-
cated product. The job required special
training. On January 24, after an inter-
view, the company asked the union hiring
hall to refer Ronald Reik, the unemployed
brother of a company official. Reik was a
union member, but he had never before
worked as a foreman. The local union busi-
ness agent, John Brown, opposed the re-
quest. For a week the union ignored the
company's mailgrams and telephone calls.
Then Brown demanded that the company
consider other unemployed union members,
who had foreman experience.

The union and the company were parties
to a nationwide collective bargaining agree-
ment which required employers to use the
union hiring hall to obtain workers, but
contained the following special provision for

the hiring of foremen who are "supervisors" under the National Labor Relations Act:

The selection of craft foremen and general foremen shall be entirely the responsibility of the employer, it being understood that in the selection of such foremen the employer will give primary consideration to the qualified men available in the local area. After giving such consideration, the employer may select such men from other areas. Foremen and general foremen shall take orders from individuals designated by the employer.

Upon local agent Brown's refusal to refer Reik for the foreman's job, the company called in representatives of the national union. At a meeting on February 18, Brown said he would "[s]ee [the company] in Washington before he would give [them] Ronald Reik," but later agreed to refer anyone the company selected if the company would first interview other qualified men.

Powers Regulator Company did interview four former foremen whose names Brown provided, but decided to ask for Reik anyway. The company submitted an official request on March 31. Brown again refused, saying the interviews were not properly conducted. The dispute was not resolved until June 24, when national representatives of the company and union met in Washington. The meeting ended when Harold Greiff, the union's representative, acknowledged the company's right to obtain a foreman regardless of the union's judgment of the foreman's relative qualifications.

In the meantime, Reik had confronted Brown. Reik told Brown he was engaging an attorney, and Brown responded that if he did

Anything can happen. You get enough guys mad, anything goes. . . . Anytime on your way home from work, on the job, going to the job, anything is

liable to happen. I'll tell you, furthermore, there is no way you'll ever be referred out of this hall, if you ever get to Powers.

Reik filed a complaint with the Board. Subsequently, he took a journeyman's job with another employer through the hiring hall. By the time the dispute ended, a decline in Powers Regulator Company's business caused the company to abandon its request for a foreman.

The Board found two violations of § 8(b)(1)(A), 29 U.S.C.A. § 158(b)(1)(A), which makes it an unfair labor practice for a labor organization to restrain or coerce employees in the exercise of rights protected by the Act. *First*, the Board reasoned that the refusal to refer Reik to a supervisory position, in disregard of the National Agreement, would coerce and restrain both him and other employees into supporting the union in order to preserve their job opportunities.[1]

*Second*, the Board found a violation in the threat Brown made to Reik, which sought to prevent him from filing charges with the Board. The Act protects from intimidation an employee's right to voice complaints to the Board.[2]

On the basis of these violations, the Board ordered the union to cease and desist, and to pay Reik the wages he lost as a result of the failure to get the supervisor job, the exact amount to be determined later. *Local No. 725, United Association of Journeymen*, 225 N.L.R.B. No. 18, 93 L.R. R.M. 1045 (1976).

There is little difficulty in finding substantial evidence on the record as a whole to support the Board's findings as to the wrongful refusal to refer Reik for the foreman's job and the improper threats against him for persisting in asserting his job rights.[3] Had the refusal been to refer Reik for an *employee* position within the cover-

1. See International Association of Heat & Frost Insulators, Local 22 (Rosendahl, Inc.), 212 N.L. R.B. 913 (1974).

2. NLRB v. Millwrights, Local 1510, 379 F.2d 679, 681 (5th Cir. 1967).

3. See Universal Camera Corp. v. NLRB, 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456 (1951).

age of the Act, in the face of some contrary duty, coupled with the threat against him if he complained, an appropriate order would undoubtedly have been enforced on the summary calendar without opinion under our Local Rule 21 practice.[4]

The issue which brought this case to the oral argument calendar and which requires an examination of the law rises out of the fact that the position to which referral was sought was supervisory. Respondent argues that neither an unfair labor practice charge nor a backpay award can be sustained on a refusal to refer a union member to a foreman's job.

The parties inform us that no court of appeals has spoken to this precise issue.[5] This case reflects a shift in Board philosophy toward increased regulation of union treatment of supervisors, who are not themselves "employees" protected by the Act, 29 U.S.C.A. § 152(3), (11). See Comment, The Status of Supervisors Under the National Labor Relations Act, 33 La.L.Rev. 800 (1975). Previously, the Board reasoned that, because the Board had no jurisdiction over supervisors and employers could use the hiring of supervisors to discourage union membership, a union did not infringe § 8(b)(2) by forcing an employer to hire pro-union supervisors. Pacific American Ship Owners Ass'n, 98 N.L.R.B. 582, 596–598 (1952).

While the Board still respects the Pacific American precedent, it has narrowed it. The Board has taken the position that § 8(b)(1)(B), which prohibits a union from coercing an employer in the selection of his collective bargaining representatives, precludes union action against members who

work as supervisors during a strike.[6] In this case the Board held that § 8(b)(1)(A) prohibits a union from wrongfully exerting control over the hiring of supervisors when the union's actions have an impact on those who are statutory employees.

Although he started as a union employee, as an expectant foreman Reik was not a statutory employee. The union argues that union action against him as a nonstatutory employee does not support the Board's theory that its actions would have an impact on statutory employees. But the Board reasoned that, because workers in the construction industry frequently cycle in and out of supervisory jobs, discrimination against Reik in his attempt to become a supervisor would carry over to intimidate him once he again became a statutory employee. In so holding, the Board relied on its characterization of the construction industry in Plumbers Local 137 (Hames Construction & Equipment Co.), 207 N.L.R.B. 359 (1973). The union objects that the Board's official notice lacks proper evidentiary support, but on this record the objection is unwarranted. Brown, the union agent, threatened to deny Reik future referrals if he got the foreman's job. That threat implies that the union expected Reik to become an employee again, and so to be dependent once again on the hiring hall.

The Board also found that four other employees whom Powers Regulator Company interviewed for the job could reasonably be expected to have known of the union's treatment of Reik. They gave Brown affidavits concerning the interviews, and the Board's inference that they knew of the controversy appears justified. The impact on them, as well as upon Reik, can be taken

**4.** The case used by the Court to announce Local Rule 21, NLRB v. Amalgamated Clothing Workers of America, 430 F.2d 966 (5th Cir. 1970), enforced a Board order finding a union violated § 8(b)(1)(A) by threatening employees with loss of employment if they did not join the union.

**5.** The Board raised the issue as an alternative holding in Operating Engineers Local 18 (C. F. Braun Co.), 205 N.L.R.B. 901 (1973), enforced per curiam, 500 F.2d 48 (6th Cir. 1974), but the Court did not address it, and the question of

backpay was considered by neither Board nor Court. See also Photographers Local 659 (MPO–TV of California, Inc.), 197 N.L.R.B. 1187, 1191 (1972), enforced, 155 U.S.App.D.C. 281, 477 F.2d 450 (1973), cert. denied, 414 U.S. 1157, 94 S.Ct. 914, 39 L.Ed.2d 109 (1974), where the Board addressed the issue in dictum.

**6.** See American Broadcasting Co. v. Writers Guild of America West, Inc., 547 F.2d 159 (2d Cir. 1976), cert. granted, 430 U.S. 982, 97 S.Ct. 1677, 52 L.Ed.2d 376 (1977).

into account in finding an unfair labor practice based on the union's wrongful refusal to refer.[7]

The union maintains the Board's impact theory is contrary to the statute. Carried to its ultimate conclusion, it would result in supervisory employees being brought under the protective cover of the Act, because any action by a company or union with respect to a supervisor that was communicated to employees would support an unfair labor practice charge.[8]

The facts of this case, however, are not that broad. Reik was not just a supervisor. He was also an employee whose future organizational rights fall within the scope of the Board's jurisdictional embrace. Union agent Brown specifically threatened those rights. Because of Reik's status as a once and future employee, the Board's order does not threaten the erosion of congressional purpose, as argued by the union.

The final question is whether the Board's backpay remedy can be based on wages Reik could have earned as a supervisor. The theory for the award is that only a make-whole remedy for Reik could remove the coercive impact of the union's illegal conduct. Both this Court and the Supreme Court have followed similar reasoning in enforcing backpay awards against employers.[9] The union points to nothing in the statute that requires different treatment for it.

While the union cites *NLRB v. Silver Bay Local No. 962*, 498 F.2d 26 (9th Cir. 1974), for the proposition that the Board may not depart from past precedent and award backpay to a would-be supervisor without explaining its action fully, that holding does not apply here. The past precedent the Court there felt the Board had ignored was the very rule it followed here: backpay to a discharged supervisor can be based on coer-cion of employees. Furthermore, after remand, the award to the supervisor in *Silver Bay* was upheld. 510 F.2d 1364 (9th Cir. 1975).

Additional support for enforcement of this order comes from Justice Harlan's opinion for a unanimous Court in *Local 207, Iron Workers v. Perko*, 373 U.S. 701, 706–707, 83 S.Ct. 1429, 10 L.Ed.2d 646 (1963). That decision held federal law preempted a supervisor's state court tort suit against a union which had forced an employer to fire him. In explaining why the union's conduct was "arguably an unfair labor practice," Justice Harlan first reasoned that because Perko's status as a supervisor fluctuated, it was entirely possible that he would be entitled to claim the protection afforded employees under the Act. 373 U.S. at 706, 83 S.Ct. 1429. Secondly, if Perko were at all times a supervisor, Justice Harlan suggested

> it may well be that a union's insistence on discharge of a supervisor for failure to comply with union rules would violate § 8(b)(1)(A) because it would inevitably tend to coerce nonsupervisory employees into observing those rules. If so, it would surely be within the Board's power under § 10(c) [29 U.S.C.A. § 190(c)] to order the union to reimburse the supervisor for lost wages.

373 U.S. at 707, 83 S.Ct. at 1433. That is essentially the theory the Board relied on in this case.

ENFORCED.

---

7. *See Industrial Union of Marine Workers (Bethlehem Steel Co.)*, 130 N.L.R.B. 412, 423 (1961). *See also* 48 Am.Jur.2d *Labor and Labor Relations* § 759 (1970).

8. *Oil City Brass Works v. NLRB*, 357 F.2d 466, 470–472 (5th Cir. 1966) (dictum).

9. *Golden State Bottling Co. v. NLRB*, 414 U.S. 168, 187, 94 S.Ct. 414, 38 L.Ed.2d 388 (1973) (unfair labor practice against employee resulted in blocking later chance to become independent contractor); *NLRB v. Talladega Cotton Factory*, 213 F.2d 209, 217 (5th Cir. 1954) (supervisor discharged for refusal to commit unfair labor practices against union).