Paul H. ROBERTSON, Individual,
Petitioner,

v.

NATIONAL LABOR RELATIONS
BOARD, Respondent.

No. 77–1831.

United States Court of Appeals,
Tenth Circuit.

Argued March 12, 1979.

Decided May 4, 1979.

Leslie W. Bailey, Jr., of the National Right to Work Legal Defense Foundation, Fairfax, Va., for petitioner.

Kenneth Hipp, Washington, D. C. (John S. Irving, Gen. Counsel, John E. Higgins, Jr., Deputy Gen. Counsel, Carl. L. Taylor, Associate Gen. Counsel, Elliott Moore, Deputy Associate Gen. Counsel, Elinor Hadley Stillman, and Alan Banov, N. L. R. B., Washington, D. C., on the brief), for respondent.

J. E. Vlastos of Cardine, Vlastos & Reeves, Casper, Wyo. (Laurence J. Cohen and Robert D. Kurnick of Sherman, Dunn, Cohen & Leifer, Washington, D. C., on the brief), for International Bhd. of Elec. Workers, Local 322, AFL–CIO.

Before HOLLOWAY and BARRETT, Circuit Judges, and MILLER, Judge.[*]

MILLER, Judge.

This case is before the court on a petition by Paul H. Robertson, the charging party, seeking review of a supplemental decision and order of the National Labor Relations Board ("NLRB") dated May 12, 1977,[1] in which the NLRB (three-number panel) reversed in part its decision of April 16, 1976,[2] and modified the order accompanying that decision. In the April 16 decision, the NLRB, *inter alia,* had (1) affirmed the ruling of the Administrative Law Judge ("ALJ") that the International Brotherhood of Electrical Workers, Local No. 322, AFL–CIO ("Union"), had violated section 8(b)(1)(A) and (2) of the National Labor Relations Act ("Act") and Bechtel Power Corporation ("Bechtel") had violated section 8(a)(1) and (3) of the Act in the State of Wyoming "[b]y maintaining, enforcing and otherwise giving effect to an exclusive hir-

---

[*] The Honorable Jack R. Miller, Judge of the United States Court of Customs and Patent Appeals, sitting by designation.

1. Reported at 229 N.L.R.B. 613, *sub nom. Bechtel Power Corp. & Paul H. Robertson; Inter-national Bhd. of Electrical Workers, Local 322, AFL–CIO, and Paul H. Robertson.*

2. Reported at 223 N.L.R.B. 925.

ing hall contractual arrangement which gives preference in referrals and employment opportunities to applicants for employment who have previously worked for employers who had collective-bargaining agreements with the Union"; and (2) affirmed the order of the ALJ directing the Union and Bechtel to cease and desist from such practices.[3] In the May 12 decision, however, the NLRB (same three-member panel) noted that its earlier decision (described above) had been based on *Nassau-Suffolk Chapter of the National Electrical Contractors' Association, Inc. and Alcap Electrical Corp.; Local No. 25, IBEW,* 215 N.L.R.B. 894 (1974), and that this case had recently been overruled by the NLRB's decision in *Interstate Electric,* 227 N.L.R.B. 1996 (1977). Therefore, it reversed in appropriate part its decision of April 16 and modified its order accordingly. Because we are persuaded that *Interstate Electric* was wrongly decided, we reverse that part of the NLRB's supplemental decision of May 12.[4]

### Background

The exclusive hiring hall contractual arrangement involved in this case establishes four groups of job applicants for purposes of referral. In order to qualify for Group I status (first priority), an applicant is required, *inter alia,* to "have been employed for a period of at least one (1) year in the last four (4) years under a collective bargaining agreement between the parties to this Addendum."[5] To qualify for Group III status (third priority), an applicant is required, *inter alia,* to "have been employed for at least six (6) months in the last three (3) years in the trade under a collective bargaining agreement between the parties to this Addendum."

As found by the ALJ (and affirmed by the NLRB), the collective-bargaining agreement (with the hiring hall Addendum) is, by its terms, between Local 322 and the Wyoming Chapter, National Electrical Contractors Association ("NECA"), Casper Division "on behalf of its members who employ workmen under the terms and conditions contained herein, and who have signed a Letter of Assent to be bound by this Agreement . . . ." The agreement further provides that it "shall also apply to other individual employers who employ workmen under the terms of this Agreement and by virtue of signing a similar Letter of Assent, authorize the . . . Wyoming Chapter NECA as their collective bargaining agent for all matters contained herein or affecting this agreement . . . ." Accordingly, the term "parties to this Addendum" includes not only the members of the bargaining association (NECA) covered by the collective-bargaining agreement, but any other employer who uses the hiring hall and has signed a Letter of Assent. As Bechtel and Local 322 have interpreted and applied the agreement, there is a third category of employers who are bound by the agreement and are, therefore, "parties to this Addendum," namely: employers who have signed an International Agreement with the IBEW and are covered by the Local 322 agreement when doing work within the jurisdiction of Local 322. Bechtel, which takes no position on any of the issues involved herein, is such an employer.

### OPINION

■ Section 8(f)(4) of the Act (29 U.S.C. § 158(f)(4)) provides in pertinent part as follows:

---

**3.** Member Fanning declined to join in "so much of the *Decision and Order that finds them* [the preference provisions of the hiring hall contractual arrangement] to be unlawful."

**4.** A related case, *NLRB v. International Bhd. of Electrical Workers, Local 322,* 597 F.2d 1326, which was joined for hearings below and before this court, involves an application by the NLRB for an order of this court enforcing its orders against the Union and

Bechtel with respect to unfair labor practices against certain individuals arising from the Union's failure to follow the job-referral provisions of the hiring hall contract. We have disposed of this case in a separate opinion and decision issued this date.

**5.** Also to have passed a journeyman's examination given by a duly constituted local of the International Brotherhood of Electrical Workers ("IBEW"). (*See* note 9 *infra.*)

It shall not be an unfair labor practice under subsections (a) and (b) of this section for *an employer* engaged primarily in the building and construction industry to make an agreement covering employees engaged (or who, upon their employment, will be engaged) in the building and construction industry with a labor organization of which building and construction employees are members . . . because . . . (4) such agreement specifies minimum training or experience qualifications for employment or provides for priority in opportunities for employment based upon length of service with *such employer*, in the industry or in the particular geographical area . . . . [Emphasis added.]

Petitioner Robertson contends that "such employer" refers to "an employer" who makes such an agreement and that priority in opportunities for employment may only be based upon length of service (seniority) with *that* employer; therefore, the priority referral provisions of the instant hiring hall contractual arrangement are not within the exception thus provided to the extent that priority is based not upon length of service with Bechtel, but upon length of service with all other employers who are "parties to this Addendum."[6]

In *International Photographers of Motion Picture Industries, Local 659,* 197 N.L.R.B. 1187 (1972), *enforced,* 155 U.S.App.D.C. 281, 477 F.2d 450 (1973), *cert. denied,* 415 U.S. 1157, 94 S.Ct. 914, 39 L.Ed.2d 109 (1974), the NLRB concluded that application of an employment referral list to preclude initial employment of an applicant "unless he has had prior employment at which he was represented by the Union" was a violation of section 8(b)(1)(A) of the Act.[7] The NLRB said:

In determining whether an employee is eligible to be placed on the roster [for preference in employment], his work experience with employers other than those who signed one of the aforementioned agreements is not considered. Thus, qualifying experience is generally limited to experience with employers having a collective-bargaining agreement with Respondent [Local 659] and/or IATSE.

There can be no doubt that the actions of Respondent in applying the roster restrained and coerced employees in the exercise of rights guaranteed in Section 7 of the Act.[8] In part, Section 7 gives employees the right to bargain collectively through representatives of their own choosing, or to refrain therefrom, subject of course to majority rule. Respondent's actions penalize employees for having exercised their statutory right to refrain from bargaining collectively through Respondent, while rewarding those employees who have chosen to work in units represented by Respondent. [Footnotes omitted.]

This rationale was applied by the NLRB in the *Nassau-Suffolk Chapter* case, *supra,* which involved an exclusive hiring hall contractual arrangement similar to the one now before us. Preference was given applicants who had prior employment "under a collective-bargaining agreement between the parties to this Referral Procedure." The NLRB found that "the parties to this Referral Procedure" included both employers within the NECA bargaining unit and employers outside the bargaining unit who had collective-bargaining agreements with

---

6. In his reply brief, Robertson states that he is concerned only with the priority referral clause—not with the "minimum training or experience" clause under which employment with any employer bound by the agreement and any other employer may be credited.

7. The NLRB distinguished such a provision from one making seniority depend on the date of hire in the bargaining unit, thus assigning inferior ranking to employees transferred from another unit. *See also Directors Guild of America, Inc.,* 198 N.L.R.B. 707 (1972), *enforced,* 494 F.2d 692 (9th Cir. 1974).

8. Section 7 (29 U.S.C. § 157) provides that employees—

shall also have the right to refrain from any or all of such activities [relating to collective bargaining] except to the extent that such right may be affected by an agreement requiring membership in a labor organization as a condition of employment as authorized in section 158(a)(3) of this title.

The exception does not apply in this case because of the Wyoming Right To Work Law. Wyo. Stat. §§ 27–7–109 to 112 (1977).

the union. It adopted the ALJ's finding that priority in opportunities for employment was not based on length of service with the employer, but rather on prior employment in which the applicant was represented by the union ("under a collective-bargaining agreement between the parties to this Referral Procedure"). It adopted the ALJ's ruling that, by maintaining and enforcing the agreement, the union violated section 8(b)(1)(A) and (2) of the Act and the employer and NECA violated section 8(a)(1) and (3) of the Act.[9]

The General Counsel of the NLRB ("GCNLRB") and the Union essentially rely on the reasoning of the NLRB in *Interstate Electric, supra*. That case involved a hiring hall contractual arrangement similar to the one before us, except that two years' employment under a collective-bargaining agreement (rather than one year) was required for Group I classification; and one year's such employment (rather than six months) was required for Group III. The two individual complainants had been laid off ahead of four other electricians (who had been referred under Group I) because the complainants, who had more seniority on the job, had been referred under Group II because they had not worked for two of the previous four years under a collective bargaining agreement. The NLRB, saying that the contractual arrangement did not on its face discriminate between applicants for referral on the basis of union membership, stated the issue as:

> whether the "2 in 4" years' experience for Group I referral priority is implicitly discriminatory because, as argued, it rewards applicants who have worked two of the last four years for employers signatory to the contract and who, by virtue of the union security provision are members of the union.

It ruled that the term "employer" as used in section 8(f)(4) included the signatory employers who executed letters of assent to be bound by the union's contract with NECA and reasoned as follows:

> In light of the special allowances which Section 8(f) makes for the employers and labor organizations in the building and construction industry a limited reading of the term "employer" in Section 8(f)(4) would be unwarranted. Rather, we believe that it is more consistent with the purposes of that section to interpret the word "employer" as including any employer who, although not a member of the multiemployer association with which the union negotiated the collective-bargaining agreement, has agreed to be bound by such agreement while performing work in that union's area of geographical jurisdiction.

The NLRB also ruled that, as thus interpreted, the provision requiring "2 in 4" years' experience under a collective-bargaining agreement for Group I referral priority was permitted under section 8(f)(4), declaring:

> There is nothing in the legislative history of that section to suggest that the term "employer" was used as a term of art to define the specific employer whose employees the union represents in an appropriate unit.

We do not agree. It is clear from the plain meaning of the statute that the antecedent basis of "such employer" in section 8(f)(4) is "an employer." Under *Interstate Electric*, the precise language used by Congress would be changed so that "an employer" would read "employers" and "such employer" would be changed to read "such employers." Resort to legislative history is unwarranted, but, even if it is considered, it provides no basis for the NLRB or this court to rewrite the statute. In pertinent part, the House Committee Report[10] states:

> Also the bill contains provisions permitting an exclusive referral system or hiring hall based upon objective criteria for referral. Thus it is permissible to give

---

9. The NLRB also ruled that refusal by the union to permit a named nonunion individual to take its journeyman's examination (passing of which was required for classification in highest priority for referral) was a violation of section 8(b)(1)(A) and (2) of the Act. Such a point is not an issue here.

10. H.R.Rep.No.741, 86th Cong., 1st Sess. 20, *reprinted in* [1959] U.S.Code Cong. & Ad.News, 2318, 2442.

preference based upon seniority, residence, or training of the sort provided by the apprenticeship programs sponsored by the Department of Labor.

The Senate Committee Report [11] contains substantially the same language:

> Such criteria as are spelled out in the bill are not intended to be a definitive list but to suggest objective criteria which shall be applied *without discrimination.* Thus it is permissible to give preference based upon seniority, residence, or training of the sort provided by the apprenticeship programs sponsored by the Department of Labor. [Emphasis added.]

We are satisfied that the plain meaning of the statute is entirely consistent with the legislative history.[12]

The GCNLRB and the Union argue that the NLRB's construction of the statute in *Interstate Electric* "helps assure a supply of workmen familiar with the work rules and other terms of the collective bargaining agreement which will necessarily govern any job to which applicants seek referral through the hiring hall; and it extends the benefits of a seniority system to more employees in this industry, which   .   .   . does not generally foster stable employee units existing in fixed locations, like those found in the manufacturing sector." Assuming the validity of the argument, it is

one properly to be made to the Congress if it is desired to amend the statute.

▮▮▮▮ The Union and the GCNLRB, noting that the agreement does not contain a union security clause, point out that it is not necessarily the case that any employee who has worked for employers under the collective-bargaining agreement has actually been a union member, so that preference in referral can be secured without ever having been a union member. From this they postulate that the provisions in the instant hiring hall contractual arrangement (giving preference to applicants who have previously worked for employers having collective-bargaining agreements with the Union) do not encourage union membership.[13] However, although preference in referral theoretically can be secured without ever having been a union member, it does not necessarily follow that the requirement to have worked for a unionized employer does not discriminate by encouraging union membership. We are persuaded that the opportunity for pressures to join the union, including that exerted by an agency shop, is greater when working for a unionized employer than when working for a nonunion employer and that such pressures are a foreseeable consequence of the discrimination in favor of applicants who have worked for a unionized employer.[14] We are

---

11. S.Rep.No.187, 86th Cong., 1st Sess. 28 *reprinted in* [1959], U.S.Code Cong. & Admin. News 1959, 2345.

12. The GCNLRB makes the point that this case involves the NLRB's interpretation of "such employer" to include individual signatory employers (such as Bechtel) and not the somewhat narrower interpretation that it includes the members of the multiemployer bargaining association which originally negotiated the agreement. We agree that it is unnecessary to reach the narrower interpretation, but point out that the plain meaning of the statute excludes both interpretations. Also, we note that the Union in its brief refers to the distinction between NECA members and nonmembers who are signatories to the contract as "artificial."

13. The Union cites *Local 357, Int'l Bhd. of Teamsters v. NLRB*, 365 U.S. 667, 674–75, 81 S.Ct. 835, 839, 6 L.Ed.2d 11, 17 (1961), for the statement that section 8(a)(3) proscribes only such discrimination as encourages or discour-

ages *membership* in a labor organization. *See also NLRB v. Bechtel Corp.,* 328 F.2d 28, 31 (10th Cir. 1964). However, in *Connell Constr. Co. v. Plumbers & Steamfitters Local Union No. 100,* 421 U.S. 616, 632, 95 S.Ct. 1830, 1840, 44 L.Ed.2d 418, 431–432 (1975), the Court said:

> The only special consideration given them [construction unions] in organizational campaigns is § 8(f), which allows "prehire" agreements in the construction industry, but only under careful safeguards preserving workers' rights to decline union *representation.* [Emphasis added.]

We note that section 8(f) was not before the Court in the *Teamsters* case, having been enacted September 14, 1959 (Pub.L. No. 86–257, 73 Stat. 545). The decision of the NLRB under review was issued October 31, 1958 (121 N.L.R.B. 1629).

14. The showing in No. 77–1720 (note 4, *supra* ) of discrimination against nonunion applicants for referral clearly evidences a motivation of encouraging union membership.

also persuaded by the *obvious inconsistency* between an employee's right under section 7 of the Act (secured by sections 8(a)(1) and 8(b)(1)(A)) to refrain from collective bargaining and the requirement in an exclusive hiring hall contractual arrangement that he work under a collective bargaining agreement in order to secure preference in referral from the hiring hall when he is out of a job and seeking employment. *See Connell Construction Co. v. Plumbers & Steamfitters Local Union No. 100, supra* note 13.

In view of the foregoing, that part of the NLRB's supplemental decision of May 12 which reverses in appropriate part its decision of April 16 is reversed. The NLRB's order of May 12 is vacated to the extent that it modifies the order of April 16. The reinstated portion of the order of April 16 will be enforced upon appropriate application from the NLRB.