**HOB NOB HILL RESTAURANT, et al., Plaintiffs,**

v.

**HOTEL EMPLOYEES AND RESTAURANT EMPLOYEES INTERNATIONAL UNION, et al., Defendants.**

**Civ. No. 85–2095–G(M).**

United States District Court,
S.D. California.

April 30, 1987.

Richard Freeman and Guy Halgren, Sheppard, Mullin, Richter & Hampton, San Diego, Cal., for plaintiffs.

Thomas Tosdal, Georgiou & Tosdal, San Diego, Cal., and Elizabeth Lishner, Pappy & Davis, Los Angeles, Cal., for defendants.

## MEMORANDUM OPINION AND ORDER

GILLIAM, District Judge.

The Honorable Earl B. Gilliam heard defendants' motion to dismiss causes of action one through four of plaintiffs' complaint on February 23, 1987. Richard Freeman and Guy Halgren of Sheppard, Mullin, Richter & Hampton appeared for plaintiffs. Elizabeth Lishner of Pappy & Davis and Thomas Tosdal of Georgiou & Tosdal appeared for defendants. After careful consideration of the briefs, the oral arguments and the written answers to supplemental questions asked by the court, this court grants defendants' motion to dismiss causes of action one through four.

## I. FACTUAL BACKGROUND

The plaintiffs in this action are Hob Nob Hill Restaurant [hereinafter "the Restaurant"] and its president, Harold Hoersch. The defendants are the Hotel Employees and Restaurant Employees International Union, its Local Number 30 [together hereinafter "the Union"], Herbert Schiffman, an organizer of Local 30, and Sherry Cook and Janet Schart, union members and waitresses at the restaurant. The Restaurant and the Union are parties to a collective bargaining agreement.

The Restaurant has employed a tip pooling system in which all tips left during the morning shift are collected and split evenly among the waitresses on that shift. In March of 1982, the Union filed a grievance against the Restaurant, claiming that tip pooling violated California Labor Code § 351 and the collective bargaining agreement. The California Department of Industrial Relations Conciliation Service conducted a secret ballot election and a majority of the Restaurant's employees voted to retain tip pooling.

In March of 1984, the Restaurant decided to employ tip pooling on a trial basis for the afternoon and evening shifts as well. The Union again filed a grievance, charging that the Restaurant's tip pooling program violated California Labor Law Code § 351 and the collective bargaining agreement. In June of 1984, an impartial arbitrator determined that tip pooling violated neither California law nor the collective bargaining agreement.

Plaintiffs allege that in March and June 1984, defendants disseminated several letters critical of plaintiff Hoersch. The letters allegedly accused Hoersch of promoting communism, of theft and of possessing two sets of business books. The letters also charged that most Restaurant employees were unhappy and encouraged the remaining waitresses to quit their jobs.

Plaintiffs further allege that in April of 1984 defendants induced, through false representations, the California Labor Commissioner's Office to issue a Notice to Discontinue Labor Law Violations to the Restaurant. In addition, plaintiffs allege that in January of 1985, the defendants caused the San Diego City Attorney's Office to file a criminal complaint against the plaintiffs. The criminal complaint charged plaintiffs with violating California Labor Code § 351 by collecting tips earned by defendants Cook and Schart. In April of 1985, the City Attorney's Office dismissed the charge.

Plaintiffs' third amended complaint advances nine causes of action. Causes of action one and two allege malicious prosecution and abuse of process in connection with the defendants' alleged efforts to induce the City Attorney's Office to file criminal charges against the plaintiffs. Causes of action three and four allege intentional and negligent infliction of emotional distress stemming from the dissemination of the letters and the filing of the criminal charges. Causes of action five through nine are RICO claims and are not at issue in this motion.

Defendants now move to dismiss causes of action one through four for lack of subject matter jurisdiction on the ground that the National Labor Relations Act (NLRA) preempts federal court jurisdiction over these four state law based causes of action.

## II. PREEMPTION DOCTRINE

Two separate, although often connected, grounds for preemption should be distin-

guished: "primary jurisdiction" preemption and "substantive" preemption. *See Brown v. Hotel and Restaurant Employees*, 468 U.S. 491, 502–03, 104 S.Ct. 3179, 3185, 82 L.Ed.2d 373 (1984); *Brotherhood Railroad Trainmen v. Jacksonville Terminal Co.*, 394 U.S. 369, 383 n. 19, 89 S.Ct. 1109, 1114 n. 19, 22 L.Ed.2d 344 (1969). The former doctrine vests primary jurisdiction to interpret federal labor law with the National Labor Relations Board (NLRB) to avoid jurisdictional conflict with state and federal courts. The latter doctrine preempts federal or state jurisdiction over resolving substantive conflicts between state law and federal labor law, essentially on Supremacy Clause grounds.

The key case on primary jurisdiction preemption remains *San Diego Building Trades Council v. Garmon*, 359 U.S. 236, 79 S.Ct. 773, 3 L.Ed.2d 775 (1959). In *Garmon*, the Court developed a test designed to reconcile the potential conflict inherent in concurrent regulation of labor activity by state and federal courts applying state laws and by the NLRB applying federal labor standards. Recognizing the dominant interest in centralized administration of national labor policy clearly reflected in the NLRA, the Court adopted a rule broadly preempting the states' role in regulating labor activity. The Court held that when labor activity is either an arguably protected "concerted activity" under § 7 of the NLRA,[1] or an arguably prohibit-

ed unfair labor practice under § 8 of the Act,[2] state and federal courts lack subject matter jurisdiction to adjudicate claims arising from such activity and must defer to the exclusive primary jurisdiction of the NLRB.[3] *Id.* at 245, 79 S.Ct. at 779. *See also International Longshoremen's Ass'n. v. Davis*, —— U.S. ——, 106 S.Ct. 1904, 1912–13, 90 L.Ed.2d 389 (1986) (reaffirming *Garmon* preemption standard); *Wisconsin Department of Industry, Labor and Human Relations v. Gould, Inc.*, 475 U.S. 282, 106 S.Ct. 1057, 1061, 89 L.Ed.2d 223 (1986) (same).

The *Garmon* Court itself, however, established two exceptions to this sweeping preemption standard. First, state regulation of labor activity is permitted when the activity involved is of "peripheral" concern to federal labor law. *Garmon*, 359 U.S. at 243, 79 S.Ct. at 779. Second, states may regulate conduct which touches "interests ... deeply rooted in local feeling and responsibility". *Id.* at 244, 79 S.Ct. at 779. The Court has also declined to find preemption where "the particular rule of law sought to be invoked before another tribunal is so structured and administered that it is safe to presume that judicial supervision will not disserve interests promoted by federal labor statutes." *Motor Coach Employees v. Lockridge*, 403 U.S. 274, 297–98, 91 S.Ct. 1909, 1923, 29 L.Ed.2d 473 (1971)[4].

---

1. Employees shall have the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection ... 29 U.S.C. § 157 (1982).

2. 29 U.S.C. § 158 (1982).

3. A showing of "arguable" protection or prohibition requires the party claiming preemption to present sufficient evidence to show that the NLRB could decide in its favor. *International Longshoremen's Ass'n. v. Davis*, —— U.S. ——, 106 S.Ct. 1904, 1914, 90 L.Ed.2d 389 (1986). However, the failure of the NLRB to assume jurisdiction over a labor case does not in itself permit the states to regulate conduct they would otherwise be precluded from regulating. *Guss v. Utah Labor Relations Board*, 353 U.S. 1, 77 S.Ct. 598, 1 L.Ed.2d 1 (1957).

4. *See, e.g, Sears, Roebuck v. San Diego County District Council of Carpenters*, 436 U.S. 180, 198, 98 S.Ct. 1745, 1758, 56 L.Ed.2d 209 (1978) (state court action for trespass not preempted in part because state court would focus on location of picketing to determine trespass while NLRB would consider the picket's content and objectives); *Farmer v. United Brotherhood of Carpenters*, 430 U.S. 290, 304, 97 S.Ct. 1056, 1065, 51 L.Ed.2d 338 (1977) (state court action for intentional infliction of emotional distress not preempted in part because the state court would determine whether the union engaged in intentional outrageous conduct causing emotional distress, not whether the union's statements were discriminatory); *Linn v. United Plant Guard Workers*, 383 U.S. 53, 63–64, 86 S.Ct. 657, 663, 15 L.Ed.2d 582 (1966) (federal diversity suit by official of employer for defamation in course of union organization campaign not preempted in part because the state court would determine whether the statements were defamatory while the NLRB would consider only whether state-

■ Substantive preemption is somewhat simpler. If application of state law results in the regulation of labor activity protected by federal labor law, the state law is preempted by operation of the Supremacy Clause.[5] *See Brown*, 468 U.S. at 503, 104 S.Ct. at 3186. The *Garmon* exceptions to primary jurisdiction preemption do not apply to substantive preemption.

## III. PREEMPTION ANALYSIS

Defendants argue that the alleged dissemination of letters and alleged misrepresentations to the City Attorney's Office were actually or arguably protected by § 7 of the NLRA. Thus, they contend that *Garmon* requires preemption of this court's jurisdiction to entertain any of plaintiffs' state-based causes of action.

### A. Is the Conduct Arguably Protected?

For purposes of this motion to dismiss, the parties have provided the court with no factual allegations underlying the state law causes of action other than those set forth in the complaint. This court, therefore, has no information regarding the content of the alleged statements made, or the circumstances surrounding their dissemination. Noting, however, plaintiffs' concession that the defendants' alleged statements were not arguably prohibited,[6] this court finds the statements to be arguably protected.

Federal labor policy encourages robust, even abusive, speech during labor conflicts. *See Old Dominion Branch v. Austin*, 418 U.S. 264, 272, 94 S.Ct. 2770, 2775, 41 L.Ed.2d 745 (1974) (reversing state libel judgment against union's use of term "scab" and "traitor" because these terms were true and not a representation of fact, respectively, and therefore protected), *Linn v. United Plant Guard Workers*, 383 U.S. 53, 62, 86 S.Ct. 657, 663, 15 L.Ed.2d 582 (1966) (defamation recovery for statements of fact made in labor context permitted only if made with knowledge that statement was false or with reckless disregard of the truth); *Cafeteria Employees Union Local 302 v. Angelos*, 320 U.S. 293, 295, 64 S.Ct. 126, 127, 88 L.Ed. 58 (1943) (use of terms "unfair" or "fascist" protected expressions of opinion). *See also* 29 U.S.C. § 158(c).[7]

■ After reviewing plaintiffs' allegations in paragraphs 14 and 18 of the complaint, this court finds that the alleged statements were either arguably protected statements of opinion or prediction, protected statements directed at Hob Nob Hill personnel or so nonsensical as not to be considered statements or representations of fact.

■ This court also finds the alleged contacts with the City Attorney's Office to be arguably protected conduct. The filing of complaints with governmental agencies or entities is protected activity. *See Eastex v. NLRB*, 437 U.S. 556, 565–66, 98 S.Ct. 2505, 2512, 57 L.Ed.2d 428 (1977) (section 7's mutual aid or protection clause protects employees from retaliation by their employers when they seek to improve working conditions through resort to administrative and judicial forums). *See also Triangle Tool and Engineering, Inc.*, 226 N.L.R.B. 1354, 1357 n. 5 (1976) (filing complaint with the Wage and Hour Division of the Department of Labor is protected activity). Plaintiffs contend that the defendants maliciously induced the office to issue a baseless criminal complaint against them. Such conduct would not be protected activity under § 7. *See Walls Manufacturing Co. v. N.L.R.B.*, 321 F.2d 753, 754 (D.C.Cir.) (malicious allegations not protected, although inaccurate ones are protected), *cert. denied*, 375 U.S. 923, 84 S.Ct. 265, 11 L.Ed.2d 166 (1963). Yet, plaintiffs acknowledge

---

ments were so misleading or coercive as to warrant a set aside of the union election).

**5.** U.S. Const. art. VI, cl. 2.

**6.** Plaintiffs' supplemental memorandum of points and authorities at 6 and 11. Plaintiffs also do not advance libel or trade libel causes of action.

**7.** The expressing of any views, argument, or opinion, or the dissemination thereof ... shall not constitute or be evidence of an unfair labor practice ... if such expression contains no threat of reprisal or force or promise of benefit (1982).

that defendants' conduct was not an arguably prohibited unfair labor practice.[8]

Because this court finds defendants' conduct arguably protected, a strict adherence to the *Garmon* standard dictates a finding that causes of action one through four are preempted. The Supreme Court since *Garmon* has, however, consistently refused to apply the *Garmon* standard in a mechanical fashion. *Sears, Roebuck v. San Diego County District Council of Carpenters*, 436 U.S. 180, 188, 98 S.Ct. 1745, 1752, 56 L.Ed.2d 209 (1978). Indeed, the Court in *Sears* substantially refined the *Garmon* analysis. This court must therefore consider whether *Sears* affects the outcome suggested by *Garmon*. The court concludes that while *Sears* complicates the preemption analysis, it nevertheless dictates a finding of preemption.

### B. Application of *Sears*

In *Sears*, the Court considered whether the NLRA preempted state court jurisdiction to enforce state trespass laws against picketing determined to be either arguably prohibited or arguably protected by law. In *Sears*, a union picketed a Sears store. The union rejected Sears' demand to remove the pickets from store property and to leave unless required by court order to do so. Sears then filed a state court trespass action which the union argued was preempted by the NLRA.

To determine whether the arguably protected character of the union activity justified preemption, the Court adopted a two-step analysis involving consideration of "primary jurisdiction" preemption and "substantive" preemption in turn. First, the Court noted that the primary jurisdiction rationale for preemption only applied when the "aggrieved party has a reasonable opportunity either to invoke the NLRB's jurisdiction itself or to induce his adversary to do so". *Id.* at 201, 98 S.Ct. at 1759. Without access to the NLRB, there is no possibility that both the state court and the NLRB could be asked to decide the same issue, which was the situation that

primary jurisdiction doctrine was developed to prevent.

In *Sears*, after the employer ordered the picketers to disperse, only the union could seek an NLRB determination that its conduct was protected by filing an unfair labor charge against the employer. While the employer could invoke the NLRB's jurisdiction to determine whether the union's conduct was prohibited, no procedure existed to permit the employer to seek a determination that the conduct was protected. Because the union refused to leave the premises and file a charge, the only party able to present the issue to the NLRB failed to do so. The aggrieved employer had no opportunity to invoke the NLRB or to induce the union to do so. The employer thus had no choice but to file a state court trespass action to resolve the labor conflict. *Id.* at 202, 98 S.Ct. at 1760.

Although the Court concluded that primary jurisdiction rationale did not therefore provide a sufficient justification for preemption, the Court observed that preemption would nevertheless be appropriate if exercise of state jurisdiction would risk a misinterpretation of federal law and result in penalizing protected conduct. *Id.* at 203, 98 S.Ct. at 1760.

The second step of analysis required the Court to assess this risk of misinterpretation. The Court identified two reasons why the risk of state interference in protected federal conduct was minimal in *Sears*. First, the type of trespassory activity at issue in that case was rarely protected. *Id.* at 205, 98 S.Ct. at 1761. Second, in cases where there was a stronger argument that their conduct was protected, the union would file an unfair labor practice charge with the NLRB to avoid a possibly adverse state court decision. In *Sears*, for example, the union could have filed an unfair labor practice charge against the employer for demanding that the union leave company property. Instead, the union elected to remain on the property and refused to leave except under court order. The Court concluded, within the context of *Sears*, that the:

---

**8.** Plaintiff's supplemental memorandum of points and authorities at 11.

[r]isk of an erroneous state-court adjudication ... is outweighed by the anomolous consequence of a rule which would deny the employer access to any forum in which to litigate either the trespass issue or the protection issue, in those cases in which the disputed conduct is least likely to be protected by § 7.

*Id.* at 206–07, 98 S.Ct. at 1762. The Court therefore found the employer's state court action not to be preempted.

Applying *Sears* preemption analysis to this case, the first issue is whether the aggrieved party had a reasonable opportunity to invoke NLRB jurisdiction or to induce his adversary to do so. In paragraph 23 of their third amended complaint, plaintiffs allege that the legality or protected nature of the defendants' conduct was not subject to adjudication before the NLRB or under the collective bargaining agreement. This court agrees.

As in *Sears,* the Restaurant could not directly invoke NLRB jurisdiction to determine whether either the letter writing or contact with the City Attorney's Office was arguably protected. The only possible way the Union could bring this matter before the NLRB would be to claim that this lawsuit was an unfair labor practice as it interfered with protected activity. The NLRB could enjoin this suit only if it found that the suit is both baseless and retaliatory. *Bill Johnson's Restaurants, Inc. v. NLRB,* 461 U.S. 731, 744, 103 S.Ct. 2161, 2170, 76 L.Ed.2d 277 (1983). Yet, the *Bill Johnson's* Court also held that the NLRB must stay the unfair labor practice proceeding if the plaintiff can present the NLRB with evidence that shows its lawsuit raises genuine issues of material fact. *Id.* at 745–46, 103 S.Ct. at 2171. *See also Sheet Metal Workers' v. NLRB,* 716 F.2d 1249, 1263–65 (9th Cir.1983).

Here, the NLRB could not find plaintiffs' suit baseless and retaliatory. Numerous factual disputes are likely to emerge with respect to whether, with whom, under what circumstances and with what intent defendants took the actions alleged. The Union's resort to the NLRB for an injunction would therefore be futile. Neither the Restaurant nor the Union could invoke NLRB jurisdiction for a determination that the defendants' conduct was protected. Thus, plaintiffs satisfy step one of the *Sears* analysis—primary jurisdiction preemption is not appropriate here.

With respect to step two—substantive preemption—the task is to balance the risk of an erroneous application of state law that penalizes protected labor conduct against the consequences of denying plaintiffs access to a forum in which to litigate their state law claims. In *Sears,* the Court concluded that the risk of state court error was minimal because trespassory conduct was rarely protected. In cases in which such conduct was more likely to be protected, the union could file a charge with the NLRB after the employer engaged in a prohibited unfair labor practice. Neither of these preconditions to minimal interference exists here.

Although trespassory conduct may be rarely protected, speech and access to government entities are rarely prohibited. *See Linn,* 383 U.S. at 62, 86 S.Ct. at 662; *Eastex,* 437 U.S. at 565–66, 98 S.Ct. at 2512. Thus, the possibility of interference with protected conduct is substantially higher here than it was in *Sears. Cf. J.S. Griffith Construction Co. v. United Brotherhood of Carpenters,* 785 F.2d 706, 710–11 (9th Cir.196) (risk of interference less when federal court construes federal labor law than when interpreting a state law based cause of action).

Second, while in *Sears* the union could file charges with the NLRB claiming that the employer's demand to leave the premises unfairly interfered with protected labor activity, the union here had no similar recourse to the NLRB to obtain a ruling on whether its conduct was protected. The prerequisite to such recourse is, of course, a bona fide claim that the employer engaged in an unfair labor practice. Again, in this context, the union could only claim that the employer's lawsuit was an unfair labor practice. As discussed above, this claim would certainly be stayed by the NLRB under the standards set forth in *Bill Johnson's.* The NLRB would accordingly

permit this action to proceed, raising the possibility that an application of state law would interfere with protected labor conduct.

This court therefore concludes that the risk of an erroneous adjudication of plaintiffs' state law claims which may penalize conduct protected by federal labor law outweighs the consequence of denying plaintiffs their forum in which to litigate claims arising from conduct likely to be protected by § 7. Plaintiffs' state law causes of action are therefore preempted under *Sears.*

## IV. APPLICATION OF *GARMON* EXCEPTIONS

Acknowledging the sweeping nature of *Garmon/Sears* preemption, plaintiffs nevertheless contend that two *Garmon* exceptions rescue their causes of action from preemption.

### A. Malicious prosecution, abuse of process and *Bill Johnson's Restaurants*

In support of their argument that their malicious prosecution and abuse of process causes of action are not preempted, plaintiffs rely solely on *Bill Johnson's Restaurants, Inc. v. NLRB,* 461 U.S. 731, 103 S.Ct. 2161, 76 L.Ed.2d 277 (1983). In *Bill Johnson's,* a fired waitress and other employees picketed the employer's restaurant. The employer subsequently filed a state court suit against the picketers, seeking damages and injunctive relief. The waitress filed unfair labor practice charges with the NLRB, claiming that the employer's state suit was filed in retaliation against the picketers' protected concerted activities.

The NLRB concluded that the employer's action was an unfair labor practice because it was filed to retaliate against the picketers. *Id.* at 736–37, 103 S.Ct. at 2166. The NLRB rested its decision on *Power Systems, Inc.* 239 N.L.R.B. 445 (1978), *enf. denied,* 601 F.2d 936 (7th Cir.1979) which held that the NLRB need only find a retaliatory motive to enjoin an employer's lawsuit as an unfair labor practice.

The Court vacated and remanded, holding that the NLRB could not enjoin a state court action as an unfair labor practice solely upon a finding that the suit was retaliatory. *Bill Johnson's,* 461 U.S. at 743–44, 103 S.Ct. at 2170. Rather, the Court required the NLRB to find that such a suit was both retaliatory and without a reasonable basis before the NLRB could enjoin the suit. The Court stressed both the First Amendment values inherent in preserving access to courts to redress grievances and the substantial state interest in adjudicating allegedly tortious conduct occurring during a labor dispute. *Id.* at 741–42, 103 S.Ct. at 2168–69.

Plaintiffs argue that *Bill Johnson's* permits an employer to maintain a civil action for malicious prosecution against an employee or union unless the action is both baseless and retaliatory.

Plaintiffs read too much into *Bill Johnson's.* *Bill Johnson's* involved a review of the standard for determining whether the filing of a particular lawsuit was itself an enjoinable unfair labor practice. *Bill Johnson's* did not deal with whether the suit was preempted. Indeed, the NLRB would not have to decide whether a retaliatory state or federal suit should be enjoined as an unfair labor practice if the suit were preempted. Thus, it is clear that the standard for enjoining lawsuits set forth in *Bill Johnson's* applies to otherwise unpreempted lawsuits. *See Bill Johnson's,* 461 U.S. at 753, 103 S.Ct. at 2175 (Brennan, J., concurring).

Plaintiffs argue, however, that the Court's approving reference to the holdings of *Linn, Farmer* and *Sears*[9] which determined particular tort suits to be unpreempted should somehow be generalized to render all tort actions unpreempted. This dicta is a thin reed on which to conclude that, with respect to tort actions, the state interest exception of *Garmon* now swallows the general preemption rule.

9. *Bill Johnson's,* 461 U.S. at 742, 103 S.Ct. at 2169.

Rather, *Linn, Farmer* and *Sears* are narrow, circumscribed exceptions to the general *Garmon* preemption standard. Categories of tort suits have been found preempted. For example, actions by individuals against employers or unions for tortious interference with employment contracts have consistently been found preempted. *See Local 926, International Union of Operating Engineers v. Jones,* 460 U.S. 669, 103 S.Ct. 1453, 75 L.Ed.2d 368 (1983); *Iron Workers v. Perko,* 373 U.S. 701, 83 S.Ct. 1429, 10 L.Ed.2d 646 (1966); *Satterfield v. Western Electric Co.,* 758 F.2d 1252 (8th Cir.1985); *In re Sewell,* 690 F.2d 403 (4th Cir.1982). *See also Buscemi v. McDonnell Douglas,* 736 F.2d 1348 (9th Cir.1984) (tort claim for intentional infliction of emotional distress preempted).

It is true that the Court in *Bill Johnson's* observed that enjoining state tort suits undermines the state interest in protecting its citizens.[10] This case, unlike *Bill Johnson's,* however, does not involve an administrative agency enjoining a lawsuit. *Bill Johnson's* turned in substantial part on the First Amendment values inherent in seeking redress from the courts. As this case does not involve enjoining a lawsuit, these values are not at stake.

This court declines to hold that *Bill Johnson's* stands for the proposition that all state tort suits are not preempted. Rather, the preemption inquiry involves a delicate balancing of state and federal interests. *Jones,* 460 U.S. at 676, 103 S.Ct. at 1458.[11] In conclusion, *Bill Johnson's* does not support plaintiffs' argument that causes of action one and two are not preempted.

### B. Intentional and Negligent Infliction of Emotional Distress and *Farmer*

In support of their argument that causes of action three and four, for intentional and negligent infliction of emotional distress, are preempted, plaintiffs rely solely on *Farmer v. United Brotherhood of Car-*

*penters,* 430 U.S. 290, 97 S.Ct. 1056, 51 L.Ed.2d 338 (1977). In *Farmer,* a local union official claimed that the union subjected him to public ridicule and verbal abuse and that the union discriminated against him in referring work from the hiring hall. A state appellate court reversed an award for intentional infliction of emotional distress, holding that the NLRB had primary jurisdiction over the case. The Supreme Court vacated and remanded.

Although the union's conduct was clearly not protected and arguably prohibited, the Court rejected a rigid application of the *Garmon* test. Rather, the Court found the state had a substantial interest in protecting its citizens from tortious conduct so outrageous that "no reasonable man in a civilized society should be expected to endure it". *Id.* at 302, 97 S.Ct. at 1064. The Court also observed that this interest outweighed any chance of state interference with federal labor law. Indeed, the possibility of state interference was slim. The state court would only focus on whether the behavior constituted outrageous conduct, causing the plaintiff mental distress. The NLRB would consider whether the union discriminated against the union official. *Id.* at 304–05, 97 S.Ct. at 1065–66. Thus, the Court held that the cause of action was not preempted.

The Court cautioned, however, that non-preemption is justified only if the state tort is (1) not "inextricably intertwined" with a labor law duty established by the collective bargaining agreement, or (2) arose from "particularly abusive" behavior. *Id.* at 305, 97 S.Ct. at 1066. *See Truex v. Garrett Freightlines, Inc.,* 784 F.2d 1347, 1351 (9th Cir.1985).

Plaintiffs meet the first prong, but fail the second. The Ninth Circuit has construed "outrageous" conduct or "particularly abusive" behavior narrowly. *See Truex,* 784 F.2d at 1351–52 (allegedly groundless job warning letters, inability to

**10.** *Id.*

**11.** In light of plaintiffs' concession that the contacts with the City Attorney's Office were not arguably prohibited, this court need not under-

take this balancing analysis. Such an analysis is appropriate only when the allegedly tortious behavior is also arguably prohibited as in *Linn* and *Farmer.*

**1274**

object to the letters prior to suspension, reassignment of work duties and additional surveillance far short of abusive conduct); *Bloom v. International Brotherhood of Teamsters,* 752 F.2d 1312, 1314–15 (9th Cir. 1984) (breach of promise to secure preferential hiring agreement not outrageous conduct); *Buscemi,* 736 F.2d at 1351–52 (insensitive and callous termination without good cause not outrageous); *Magnuson v. Burlington Northern,* 576 F.2d 1367 (9th Cir.) (presentation of false evidence in allegedly conspiratorial cover-up of termination of employee not outrageous), *cert. denied,* 439 U.S. 930, 99 S.Ct. 318, 58 L.Ed.2d 323 (1978). *Compare Richardson v. Communications Workers of America,* 443 F.2d 974, 983–85 (8th Cir.1971) (posting of 1,000 vile signs, constant chanting, jeering and gesturing, a daily rain of nuts, bolts, and screws, intentional cigarette burns, vandalism of car and locker and vulgarities about spouse constitutes outrageous conduct), *cert. denied,* 414 U.S. 818, 94 S.Ct. 38, 38 L.Ed.2d 50 (1973).

Plaintiffs' complaint did not append copies of the offending letters, nor did it describe the circumstances in which the letters were circulated. Based on a review of the excerpts of the letters set forth in the complaint, the court finds that the allegations fall far short of the conduct described in *Richardson,* the case commonly used as a yardstick for Ninth Circuit analysis in this area.

Most importantly, *Linn, Farmer* and *Richardson* turned in large part on the fact that the tortious behavior alleged was clearly not protected. Such is not the case here. Given the concededly arguably protected nature of the statements, it cannot be said that "no reasonable man in a civilized society should be expected to endure" the statements. Rather, the statements were the arguably protected and expected product of labor conflict. As a result, unlike in *Farmer,* there exists a substantial risk here that application of state law of intentional and negligent infliction of emotional distress will interfere with conduct arguably protected by federal labor law. Plaintiffs' reliance on *Farmer* is therefore misplaced.

Plaintiffs' causes of action one through four are therefore dismissed with prejudice.

IT IS SO ORDERED.